SUSAN D. ROGERS, Admx.

*v.*

CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RY. CO.

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

1. RAILROADS—*company owes to employees the duty of keeping track free from obstructions.* A railroad company owes to its employees operating trains the duty of using reasonable care and diligence to provide a safe track on which to run its trains and to maintain the same free from obstructions.

2. SAME—*duty of warning employees of obstruction cannot be delegated to fellow-servant.* The duty of a railroad company to warn its trainmen of an unexpected obstruction on the track cannot be delegated, so as to relieve the company from responsibility, by notifying a fellow-servant of such trainmen of the obstruction and trusting him to notify them.

3. TRIAL—*when question of notice should be left to the jury.* Whether the defendant railroad company was negligent in not placing a red light upon an obstruction which subsequently caused the death of a fireman on a freight train is a question of fact, which should be left to the jury.

*Rogers v. C., C., C. & St. L. Ry. Co.* 109 Ill. App. 494, reversed.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Wabash county; the Hon. P. A. PEARCE, Judge, presiding.

LANDES & KOLB, for plaintiff in error.

C. S. CONGER, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiff in error sued out this writ to reverse a judgment of the Appellate Court for the Fourth District affirming a judgment against her for the costs of a suit by her against the defendant in error. She brought her action on the case in the circuit court of Wabash county against the defendant for wrongfully causing the death of her husband, Nathan L. Rogers. At the close of all

the evidence the jury were peremptorily instructed to return a verdict for the defendant, which being done, judgment was entered against the plaintiff for costs of suit, and that judgment has been affirmed by the Appellate Court.

There is no substantial controversy between the parties as to the facts. The deceased was killed at Carmi shortly after two o'clock in the morning of April 5, 1902. At the place of the accident there were two railroad tracks, known as the "passing track" and the "stock track," which were used jointly by the defendant and the Louisville and Nashville Railroad Company. On the morning preceding the accident the defendant placed two empty stock cars upon the stock track in position to be loaded. Later in the day the Louisville and Nashville placed on the west end of that track one of its cars, No. 5596, and in doing so moved the two stock cars east beyond the stock chute where they were to be loaded. When the stock men got ready to load their cars they notified the agent of the defendant of this fact and requested him to have the cars again placed in position, but he neglected or refused to do so, and about four o'clock in the afternoon they themselves pushed the stock cars back to the chute in order to load their stock, in doing which they pushed car No. 5596 west to a point where it obstructed the passing track. After the stock cars were loaded they were left opposite the chute and car No. 5596 left so as to still obstruct the passing track. The defendant had been notified, through its agent, that the car had been placed upon the stock track but had no actual notice that it obstructed the passing track until about eleven o'clock P. M. of that day, when its agent went into the yards to seal the stock cars and then discovered the obstruction, and immediately telegraphed the fact to the train dispatcher of defendant at Mt. Carmel, who thereupon, through the operator at Harrisburg, a station south of Carmi, notified the conductor of a

freight train coming north, on which Rogers was fireman, that a car blocked the track at Carmi, to govern his train accordingly, and upon reaching there to remove the obstruction. That message was delivered to the conductor upon the arrival of his train at Harrisburg about midnight, and the train proceeded north, arriving at Carmi at fifteen minutes after two o'clock on the morning of the fifth. It was stopped some distance south of the obstruction, where the engine was detached and run up to within about forty feet of the obstructing car. The brakeman threw the switch to allow it to run on to the passing track. The deceased was at his place on the left side of the engine, looking out of the cab window for signals from the head brakeman. After the switch had been thrown the engineer asked deceased if everything was ready, and he replied, "go ahead." The engineer opened the throttle and moved up about one revolution of the wheels when he heard a brushing noise. He immediately called to Rogers, and receiving no answer, stopped the engine and went over to him. He found his head crushed between the window and the obstructing car, which caused his death almost immediately.

The only evidence in the record as to notice to the train crew of which the deceased was fireman, was as follows: The conductor testified that he got an order at Harrisburg from the train dispatcher, as follows:

"96.—Understand men loading stock at Carmi let car run down, blocking west end of passing track. Please be governed, and clear it.                                    E. A. T."

Train orders always come in duplicate; special orders do not. E. A. Tulong, dispatcher at Mt. Carmel, testified: "About eleven P. M., April 4, message reached our office stating, in substance, that men loading stock at Carmi had left a car blocking west end of passing track. In five minutes thereafter I sent to Harrisburg a message, as follows: [repeating the dispatch as testified to by the conductor.] All orders for movements of trains are

in duplicate, but notice to trainmen of danger is not duplicated.   I know what the general custom is in regard to giving notice to trainmen of danger.   *   *   *   It is the general custom to give notice, but not in duplicate, to the conductor of the train, only, and it is his duty to notify the rest of the trainmen of the danger." Thomas Reynolds, superintendent of the defendant, testified that the general custom in regard to giving trainmen notice of dangerous obstructions on the line of the road was "to give but a single notice to conductors, and to no other of the trainmen; it is the conductor's duty to give notice to train crew." There is in this record an entire absence of proof that the conductor of the freight train informed the engineer or the deceased of the receipt of the dispatch at Harrisburg, or that either of them had any warning whatever of the obstruction.   Neither is it claimed that the general custom spoken of by the train dispatcher and superintendent of giving "but a single notice to conductors and to no other of the trainmen" was known to the deceased.

The principal ground of reversal relied upon is that the trial court erred in instructing the jury to find for the defendant.   We do not understand it to be denied that the car No. 5596 was an obstruction to the safe use of the passing track, and that the company had such knowledge of that fact as to require of it notice or warning to its employees who were required to use that track, and so the material question on this branch of the case is, did the defendant discharge that duty in such a manner as that it can be said, as a matter of law, it used reasonable diligence to notify the deceased of the danger. A railroad company owes the duty to its employees operating its trains to use reasonable care and diligence to provide a safe track on which to run its trains, and to maintain the same free from obstruction.   "Where the obstruction on or near the track is not placed there by the employer, then there is no breach of the employer's

211—9

duty, unless it is affirmatively shown that the employer was guilty of negligence in not removing the obstruction or was guilty of negligence in not warning the employee." (3 Elliott on Railroads, sec. 1269, p. 2000.) Here we think there was such affirmative proof of the defendant's negligence in not warning the deceased of the obstruction which caused his death. Other questions, such as whether or not he was himself in the exercise of due care for his own safety; whether or not he did see or could have seen the obstructing car, etc., were controverted questions of fact, and so, unless it can be said, as a matter of law, that the defendant used reasonable care and diligence to notify the deceased of the dangerous condition of the track at the point of the accident, it was error to direct the jury peremptorily to return a verdict for the defendant.

As we understand the argument of counsel for the defendant in error, the contention is, that when the train dispatcher was notified of the existence of the obstruction and promptly informed the conductor of the freight train upon which the deceased was a fireman, the company had discharged its legal duty to the train crew, and that the negligence of the conductor in failing to communicate that information to the fireman, Rogers, was the negligence of a fellow-servant, for the consequences of which the company cannot be held liable, and hence a considerable portion of the argument on either side is devoted to the question whether or not the conductor of the train occupied the position of a vice-principal to the company or was only a fellow-servant of the deceased. If the case turned upon the solution of that question it would be easy of disposition, the rule being well settled in this State that the different members of a train crew, including the conductor, are, generally speaking, fellow-servants. But we are here confronted with a rule of law applicable to the facts of this case and binding upon the defendant company, in no way af-

fected or controlled by the fact that the conductor and
the deceased were, at the time, fellow-servants, and that
the death of the latter was the result of the negligence
of the former.  When the defendant received information
of the obstruction it became its duty to use reasonable
diligence to warn the deceased of the danger, and that
duty was one which it could not relieve itself of by di-
recting his fellow-servant to perform it.  It being a duty
owing by the master to the servant, it could not dele-
gate that duty to another, even though a fellow-servant
of the deceased, and absolve itself from liability for the
injury resulting in consequence of the failure to commu-
nicate knowledge to deceased of the increased hazard.
(*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242.)  In *Chicago,
Burlington and Quincy Railroad Co.* v. *Avery*, 109 Ill. 314, it
was said by this court (p. 322):  "The negligence of fel-
low-servants is one of the ordinary perils of the service
which one takes the hazard of in entering into any em-
ployment, but the master's own duty to the servant is
always to be performed.  The neglect of that duty is not
a peril which the servant assumes, and where the per-
formance of that duty is devolved upon a fellow-servant
the master's liability in respect thereof still remains."
In *Chicago and Eastern Illinois Railroad Co.* v. *Kneirim*, 152
Ill. 458, we again said (p. 461):  "It is the duty of the com-
pany to exercise reasonable and ordinary care and dili-
gence in providing and keeping in repair reasonably safe
machinery and appliances for the use of its servants;
and this is a continuing duty, requiring the company to
exercise reasonable diligence and care in supervision
and inspection.  The delegation of that duty to an em-
ployee does not relieve the company from liability be-
cause of the negligence of that employee in the discharge
of that duty."  See, also, *Mobile and Ohio Railroad Co.* v.
*Godfrey*, 155 Ill. 78; *Hess* v. *Rosenthal*, 160 id. 621.  In the
still later case of *Chicago and Alton Railroad Co.* v. *Eaton*,
194 Ill. 441, which was an action like this, to recover for

the death of the plaintiff's husband, an engineer, caused by a rail upon the track on which he was running having been removed without warning to him, we used the following language (p. 445): "It was the duty of appellant to furnish the deceased a reasonably safe track upon which to operate his engine, and it could not delegate that duty. Neither could it delegate the duty of notifying the deceased that the rail had been removed, so as to absolve itself from liability for a failure to communicate such information to the deceased,"—citing authorities.

"The law imposes upon the master certain duties which concern the safety of his servants, and while he may, of course, delegate the duties to another, his doing so in nowise affects his responsibility for their proper performance. If one servant is injured by reason of the negligent performance of one of these duties by another servant to whom it has been delegated by the master, the master cannot escape liability on the ground that the negligence was that of a fellow-servant. In other words, where a servant is entrusted with the performance of one of the master's personal duties, he is, with respect to that duty, a vice-principal or representative of the master, who will be liable to another servant for the negligent performance by the vice-principal of the delegated personal duty to the same extent as for his own negligence." (12 Am. & Eng. Ency. of Law,—2d ed.—946.)

It is clear from these authorities, and none are cited to the contrary, that the defendant wholly failed to prove that it performed its legal duty to warn plaintiff's intestate of the known obstruction upon the passing track which caused his death. We are also of the opinion that whether or not it was the duty of the defendant, under the circumstances of the case, in the exercise of due care, to warn its employees exposed to the danger of the obstruction, to display a danger signal at the place, was a question which should have been submitted to the jury.

On the whole record, it seems clear to us that the trial court was not authorized to take the case from the jury, but should, under proper instructions as to the law, have submitted the questions of fact to it for determination.

The judgments of the circuit and Appellate Courts will accordingly be reversed, and the cause will be remanded to the circuit court for another trial.

*Reversed and remanded.*