George Powers, Administrator, Appellee, v. Chicago, Burlington & Quincy Railway Company et al., Appellants.

1. MASTER AND SERVANT—*duty of railroad company to locomotive fireman.* A railroad company employing a locomotive fireman is not an insurer of the safety of the tracks upon which he is required to run nor is such company required to furnish the most approved appliances or to exercise the highest degree of care to provide safe tracks, but it is the duty of such company to exercise reasonable care to provide reasonably safe tracks, switches, appliances and equipment.

2. MASTER AND SERVANT—*when negligence of fellow-servant will*

*not preclude recovery.* If a servant is injured as the result of the combined negligence of his master and a fellow-servant, the master is nevertheless liable.

3. MASTER AND SERVANT—*how question of duty of railroad company to patrol track determined.* Whether a company, having actual knowledge of a heavy storm, is, with respect to its servants, under the obligation to patrol its tracks, is a question of fact to be determined by the jury, and whether it has violated such duty, likewise, is a question for the determination of the jury. The duty to patrol, if it exists, is a non-delegable one.

4. PLEADING—*what admitted by plea of general issue.* By interposing merely a plea of the general issue, a defendant railroad company impliedly admits the allegations of the declaration concerning the ownership and operation of the railroad.

5. EVIDENCE—*when rulings with respect to, not ground for reversal.* In the absence of prejudice, rulings upon questions of evidence, even though technically erroneous, are not ground for reversal.

6. INSTRUCTIONS—*propriety of reference to declaration.* It is not improper for the court to refer the jury to the declaration to determine the negligence charged.

7. INSTRUCTIONS—*when refusal of, precluding recovery upon particular count, not ground for reversal.* Where the evidence warrants a recovery under one count of the declaration, it is not error for the court to refuse an instruction to find for the defendant under a count of the declaration not supported by the evidence.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cass county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1907. Affirmed. Opinion filed April 21, 1908. Rehearing denied May 22, 1908.

SWEENEY & WALKER, for appellant; CHESTER M DAWES, of counsel.

MILLS & McCLURE, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is an appeal from a judgment for $10,000 in the Circuit Court of Cass county, in favor of appellee and against the appellants, in an action on the case to recover damages for wrongfully causing the death of

appellee's intestate, George H. Stinson. The first count of the declaration charges that the appellant railroad company was the owner of certain railroad and switch tracks, which the appellant railway company operated as lessee; that the deceased, George H. Stinson, was employed by said railway company as a locomotive fireman and that it was the duty of appellant to exercise reasonable care to furnish the deceased with a reasonably safe place in which to work; that appellants negligently connected a side track at Ipava with the main track there by means of an "automatic frog switch" and "split rail switch," whereby cars standing upon the sidetrack were allowed to pass from said side track on to the main track automatically, and without throwing the switch by hand; that said side and main tracks were constructed on a heavy down grade without any derail, or other safety device, to prevent cars on the side track from escaping on to the main track; that at about 1 o'clock A. M. on June 30, 1906, in consequence of the negligence of appellants three cars escaped from said track and ran down the main track, whereby the deceased, while in the discharge of his duties as fireman on a locomotive engine hauling one of the appellants' passenger trains on said main track, and while the deceased and the engineer in charge of the engine were in the exercise of due care for their own safety, said engine with great force and violence collided with said freight cars on the main track thereby killing the deceased, etc. The additional amended count charges that on June 30, 1906, a storm of some severity, of which appellants had notice, occurred at Ipava and vicinity, and three cars then and there standing upon a side track were started in motion by wind and blown from said side track on to the main track and on said main track a distance of two miles to the foot of a grade, where said cars stopped; that it was the duty of appellants, then and there, after a wind storm of any severity, to patrol said main track, or by otherwise inspecting it, to discover

obstructions thereon, and that if said track had been so patrolled, or otherwise inspected, said three cars would have been discovered thereon; that appellants did not then and there patrol or otherwise inspect said track, and did not use reasonable care to provide a reasonably safe place for the deceased to work, but on the contrary wholly neglected to perform their duty in that respect, whereby said three cars on the main track were not discovered, but were permitted to remain thereon for three hours after said wind storm; and that while the deceased was in the discharge of his duty, as alleged in the first count, he was killed as therein charged, etc. To this declaration appellants pleaded the general issue.

The facts as conclusively determined by the evidence in the case are substantially as follows: The main and side tracks in question run east and west through the village of Ipava. The side track, about 1,600 feet in length, is located north of the main track upon a three-degree curve and is connected at its east end with the main track by a split switch with spring-rail frog. When cars are desired to be run from the side track to the main track, the switch is ordinarily operated with a hand lever, whereby the north split rail is disconnected from the north rail of the main track, and the south split rail is connected with the south rail of the main track. If, however, cars on the side track are run with sufficient momentum, the force of the pressure exerted by the flange of the car wheels upon the split rail is sufficient to open the switch and permit the cars to go upon the main track, and after the cars have so passed over the switch the spring in the frog operates automatically to close the switch. The switch at the east end of the side track was not equipped with a derail contrivance, the function of which is to throw cars off the track on to the ground, when the switch is not in proper position to connect the side track with the main track. From a point on the side track 700 feet west of its connection with the main track, there

is a slight incline, the grade being 1.07 feet, or one-tenth of a foot in each 100 feet. Taking into consideration the slight grade of the side track mentioned and the curve in the track which operates to produce some friction upon the upper rail by the flange of the car wheels, either while stationary or in motion, the portion of the side track here involved presents the same conditions with reference to the movement of cars thereon as does a level track. A split switch such as the one in question is a standard type of switch ordinarily used on western railroads, and by appellants, without a derail contrivance, where the track conditions are similar to those in question. At about 9:30 o'clock in the forenoon of June 29, 1906, a freight train operated by appellant railway company stopped at Ipava and took one of six freight cars standing upon the side track. Five cars, one partially filled with corn, and four stock cars, were left upon the side track about 200 feet from the main track, and the brakes were set upon three of the cars. At about ten o'clock at night on the same date, a severe wind and rain storm prevailed along the line of appellants' railroad about Ipava, of which storm appellant railway company had notice, as is evidenced by the following cautionary telegram sent by J. W. Mulhern, superintendent of the Galesburg division of appellant railway company and delivered to the conductor of passenger train No. 52 at Galesburg:

"Engr. No. 52                               D 6/29

Acct. very heavy rain and wind storm trains will run carefully over track liable to be affected.   J W M."

A copy of this telegram was given by the conductor to the engineer of train No. 52 and by the latter to the deceased, as is evidenced by the fact that the same was found in a pocket in the clothing of deceased after his death. At about 1 o'clock in the morning of June 30, 1906, and at a point on the main track about a mile and a half east of Ipava, train No. 52, a passenger

train consisting of a locomotive and six cars, upon which J. G. De Sollar was locomotive engineer and the deceased was fireman, collided with the five freight cars which were standing there at the bottom of an up grade, and which had escaped from the side track on to the main track. The force of the impact derailed the locomotive and appellee's intestate was crushed between the cab and the tender, sustaining an injury from which he died. A portion of rule No. 1152 relating to the duties of a section foreman embodied in a book of rules issued by appellant railway company to govern the conduct of its employes, is as follows: "In case of heavy storms and rains or violent winds have the entire section patrolled both day and night, especially watching points where obstructions are likely to occur. Except in case of emergency, allow no work that will obstruct the track to be done during fog or storm." The evidence tends to show that the wind storm which prevailed on the night of June 29th, while general in its scope, was most severe within a comparatively narrow path directly in line with the side track upon which the five freight cars were standing, and that within that path trees were blown down, and more damage was done than in other territory adjacent.

Nelson Madison, who was in the employ of appellant railway company as section foreman, in the section of the railroad where the accident occurred, testified that he lived in Ipava, about four blocks from the switch in question; that he went to bed at about 9:30 o'clock on the night of June 29th and that he heard the wind about 15 minutes later; that he arose and went out on the porch of his house where he watched the storm and then closed the window and locked the door and returned to bed, where he remained until he was awakened at about 2 o'clock A. M. to look after the wreck; that he did not consider the storm to be more than a usually hard wind, or that it was sufficiently severe to require him to make an inspection, and that the track was not patrolled that night.

J. G. De Sollar, the engineer of the wrecked train, testified that the night was dark and stormy; that he kept a sharp lookout for anything he could see but at times could not see very much; that as he neared Ipava he discovered an object on the track about 400 or 450 feet ahead of his train; that he could not see any further ahead than that distance; that as soon as he discovered the object he hollered to the deceased, "George, look out for yourself;" that he then shut off the engine, opened the sand box and applied the air brakes and lever, and that the train was stopped as soon as possible.

A preponderance of the evidence tends to show that the side track, for a point 50 or 60 feet west of its connection with the main track, was on a slight up grade to such connection, but however that may be, it is clearly established by the evidence that no derails were used upon appellants' railroad at switch connections, where the side track was practically level, as in the case at bar, and that at all points where derails were used for the purpose of making a reasonably safe track, the side tracks were on a much steeper down grade than the grade of the side track in question.

Appellants were not insurers of the safety of the track, nor were they required in this case to furnish the most approved appliances, or exercise the highest degree of care, to provide a safe track, but their obligation to the deceased was fulfilled if they exercised reasonable care to provide reasonably safe switches and equipments. Rogers v. C., C., C. & St. L. Ry. Co., 211 Ill. 126. We are clearly of the opinion that the evidence in this record does not convict appellants of the negligence charged in the first count of the declaration.

The alleged liability of appellants arising under the allegations of negligence in the additional count of the declaration presents a more serious question. It is urged on behalf of appellants that the death of the deceased was caused by the negligence of his fellow

servant, the engineer De Sollar; that De Sollar was negligent in failing to observe the directions to run his train carefully over the track liable to be affected. This position necessarily assumes that appellants were not guilty of negligence contributing to the death of the deceased. If a servant is injured as a result of the combined negligence of his master and of a fellow servant, the master is nevertheless liable. Missouri Malleable Iron Co. v. Dillon, 206 Ill. 145.

Furthermore, the duty imposed upon the master to exercise reasonable care to provide a reasonably safe place for his servant to work, is a duty which cannot be delegated, so as to relieve the master from liability. Rogers v. C., C., C. & St. L. Ry. Co., *supra;* Deering v. Barzak, 227 Ill. 71. If the appellant railway company was guilty of negligence in failing to inspect or patrol the track in the path of the storm and thus discover the obstruction which caused the accident it cannot escape liability therefor upon the ground that the negligence of a fellow servant of the deceased concurred in causing such accident. The duty, if it existed, to inspect or patrol the track after the storm was a duty resting upon the appellant railway company, which it could not delegate, so as to relieve itself from liability.

We are not, however, persuaded that the locomotive engineer was guilty of negligence. The evidence does not disclose at what rate of speed the train was running at the time of the collision, but the results following the collision do not impress us as justifying the conclusion that it was running at a rate of speed beyond the ability of the engineer to reasonably control. In the face of the direction to "run carefully over track liable to be affected," it will not be presumed, in the absence of evidence to the contrary, that the engineer periled the lives of himself, the train crew and the passengers by running his locomotive at a dangerous rate of speed. As we have heretofore said, it is conclusively established that the appellant rail-

way company had actual notice that a very heavy rain and wind storm had prevailed or was prevailing, along the line of railroad over which train No. 52 was scheduled to run, and this knowledge said appellant must have acquired immediately after the storm arose, as it was communicated to the train crew at Galesburg, a station a very considerable distance from the place of the accident. Having such actual knowledge, it became a question of fact for the jury to determine, whether in the exercise of reasonable care to keep the track in a reasonably safe condition for travel, it was incumbent upon appellant railway company to patrol or otherwise inspect the track, and whether or not the space of three hours which followed the storm and preceded the accident, was a reasonably sufficient time in which to perform that duty.

While the portion of rule 1152, heretofore mentioned, requiring section foremen, in case of heavy storms and rains or violent winds, to have the entire section patrolled both day and night, was not competent to be admitted in evidence for the purpose of establishing a substantive ground of recovery, it was competent as tending, together with the other evidence in the case, to establish the negligence alleged in the additional count of the declaration. It was equivalent to an admission by the appellant railway company that reasonable care to keep the track in a reasonably safe condition, required that the track should be patrolled when the conditions mentioned in the rule existed. L. S. & M. S. Ry. Co. v. Ward, 135 Ill. 511; Chicago City Ry. Co. v. Lowitz, 218 Ill. 24.

The duty to patrol the tracks being one which the appellant railway company could not delegate so as to avoid liability, it can make no difference that the section foreman did not consider the storm of sufficient severity to require action by him. It is significant in this case that the language of the telegraphic direction by the superintendent of appellant railway company, heretofore referred to, characterized the storm which

had prevailed in almost the precise words employed in the rule offered in evidence. By that telegram the train crew were notified that "very heavy rain and wind storm" conditions existed, and in the rule offered in evidence, "heavy storms and rains or violent winds" are the conditions stated, requiring the entire section to be patrolled both day and night.

It is urged on behalf of appellants that the telegraphic direction referred to superseded the necessity or duty devolving upon the railway company to patrol or otherwise inspect the track. This contention is necessarily predicated upon the theory that the duty to inspect or patrol the track could be delegated to the train crew. The premise of this contention being false it necessarily follows that the contention is without merit.

Upon the whole record we are of opinion that the jury were not unwarranted in finding appellants guilty of the negligence alleged in the additional count of the declaration.

In view of the fact that appellants only pleaded the general issue, there is no force in the insistence of appellant railroad company that appellee failed to prove the ownership of the railroad by said company, as alleged in the declaration. By interposing merely a plea of the general issue, appellants impliedly admitted the allegations of the declaration concerning the ownership and operation of the railroad. Penn. Ry. Co. v. Chapman, 220 Ill. 428; Chicago Union Trac. Co. v. Jerka, 227 Ill. 95.

It is urged that the court erred in permitting appellee to prove that there was a derail device at the west end of appellants' side track at Ipava, and also at other points on the line of the railroad. An examination of the record discloses that some of the evidence complained of was admitted without objection, and in response to cross interrogatories propounded by counsel for appellants to witnesses called by appellee who had not been interrogated upon that subject in their

direct examination, particularly the witness J. G. De Sollar and the witness Nelson Madison when recalled by appellee. Appellants could not, therefore, have been prejudiced by the ruling in the instances in which objection was interposed. Other objections urged to the admission of certain testimony are so clearly without merit as to require no discussion. Appellants' criticism on the first and second instruction given on behalf of appellee are not justified. What has heretofore been said as to the liability of appellant railroad company answers the first objection to the first instruction, and the second objection, manifestly due to an oversight, is withdrawn. The second instruction merely referred the jury to the declaration to determine the negligence charged and has repeatedly been held to be unobjectionable. Chicago City Ry. Co. v. Carroll, 206 Ill. 318.

The tenth instruction offered by appellants and modified by the court was improper as offered, and as modified and given to the jury it was most favorable to appellants. What we have heretofore said in discussing the alleged contributory negligence of the locomotive engineer, precludes the necessity of further discussion of the objection urged to the modification by the court of that instruction. The thirteenth instruction offered by appellants, and given to the jury as modified by the court, is alleged by the modification to have informed the jury that the burden of proof as to the knowledge of appellants of the presence of the freight cars upon the main track was not upon appellee. There is no basis for such objection to the instruction as modified. The instruction as given expressly makes proof by appellee by a preponderance of the evidence of the fact of such knowledge, a prerequisite to a finding that appellants had such knowledge. It is also urged that by the modification, the instruction authorized a recovery upon proof of constructive knowledge of that fact, while the declaration alleged actual knowledge only.

We do not so read the declaration, but if the modification of the instruction was subject to the criticism made, it would avail appellants nothing, because the instruction as offered contained a like reference to constructive knowledge.

Error is assigned upon the action of the court in refusing certain instructions offered by appellants. Where the evidence warrants a recovery under one count of the declaration it is not error for the court to refuse an instruction to find for the defendant under a count of the declaration not supported by the evidence. Franklin Prtg. Co. v. Behrens, 181 Ill. 340. There was no error therefore in refusing the second instruction offered by appellants. The third refused instruction was argumentative, and inaccurate in its statement of the duty imposed upon the appellants and was properly refused. The fourth refused instruction was inaccurate in that it recognized the right of appellant railway company to escape liability by delegating the performance of a duty primarily resting upon it.

In view of the fact that the evidence conclusively established knowledge on the part of appellant railway company that a very heavy wind storm prevailed on the night of the accident there was no error in refusing the fifth, ninth and twelfth instructions offered by appellants.

There is no reversible error in the record, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*