### Donk Bros. Coal & Coke Company v. Nicholas Thil.

1. FELLOW-SERVANTS—*when doctrine of, has no application.* Where the duties charged to have been violated were those which could not be delegated by the master, the fellow-servant rule does not apply.

2. CUSTOM—*when proof of, competent notwithstanding not relied upon in pleadings.* Proof of a custom not pleaded may be proper in order to establish an ultimate fact charged.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

WISE & McNULTY, for appellant.

BURTON & WHEELER and W. E. HADLEY, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of

250    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Donk Bros. Coal & Coke Co. v. Thil.

Madison county, by appellee against appellant, to recover for a personal injury sustained by appellee while engaged in the service of appellant in its mine as a driver. Trial by jury. Verdict and judgment in favor of appellee for $2,000.

The declaration consists of two counts charging in substance, that while appellee was passing along one of the entries or passageways in appellant's mine, in the exercise of due care and caution for his own safety, appellant caused explosives to be discharged in the rock roof of the passageway, whereby the roof was broken and fell upon appellee, and flashes of fire from the explosion struck him and seriously injured him. And that this was done without giving him any notice or warning, and without any knowledge on his part of an intention to do so, or of the existence of danger. The declaration is based upon the common law duty of a master to exercise reasonable care and diligence to provide and maintain a reasonably safe place, and to warn the servant of increased risks and impending dangers known to the master and not known to the servant.

The grounds upon which appellant asks a reversal in this case are: The alleged error of the trial court in admitting certain evidence on behalf of appellee; in giving the first and second instructions given on behalf of appellee; in refusing to give instructions "B," "C" and "D," asked on behalf of appellant; and in refusing to grant a new trial, for want of a preponderance of the evidence in support of the verdict, and because the amount of damages assessed is excessive.

The evidence tends to prove that appellee had been employed by appellant as a driver in one of its mines for more than two years before the time of his injury; that the usual hours for ordinary work in the mine were from seven o'clock in the forenoon to three thirty o'clock in the afternoon; that on the day of the injury appellant had put two of its timbermen at work in the main north entry for the purpose of making it

safe, and their duty was to timber it up where neces-
sary, or to take it down if they could not timber it;
that in doing this work these timbermen drilled two
holes in the rock of the roof and charged them with
dynamite, to be exploded for the purpose of throwing
down the rock; that it was the general custom and
practice with respect to doing work of that kind in that
mine, that the charges of dynamite were not exploded
in the entries or drive ways before three thirty o'clock,
or until the ordinary workmen were all out of the
mine; that appellee took his mule to the stable about
three o'clock, and started to go back by way of the
main entry to get his coat and bucket, preparatory to
going out of the mine for the day, and in doing so
would pass under the roof containing the dynamite
charges, at a place about three hundred yards from
where he started, and that as he reached that point,
without any knowledge or warning whatever, except
that he heard some one say "look out," or "hey," the
dynamite exploded; that it exploded at the same time
he heard this expression, knocking him down, bruising
and burning him and severely injuring him.

The evidence on the part of appellant tends to prove
that the dynamite charges were small charges, ignited
by means of fuses fifteen or sixteen inches long, and
that such fuses burn at about the rate of one foot to
the minute; that just before or at the time the first
fuse was lit, both of the timbermen "hollered" "fire,"
and that this was repeated two or three times, and that
after the second fuse was lit they went up the entry
towards the face far enough to be out of danger of the
charge next to them, thirty or forty feet, and were
stopping the men that were coming along; that the two
charges were placed ten or twelve feet apart, and that
the first one to explode, the one that injured appellee,
was the one furthest from where the timbermen stood;
that after lighting the fuses the timbermen both went
together in the direction of the face, because they did
not think that any one would be coming from the direc-

252     APPELLATE COURTS OF ILLINOIS.

VOL. 128.]     Donk Bros. Coal & Coke Co. v. Thil.

tion of the bottom of the shaft; that after the second fuse was lit they saw a light approaching fast, and they both "hollered" "fire," and one of them "hollered" "shoot," "stop," "stay there"; that when they first saw the light it was fifty or sixty feet from the charge that first exploded; that they "hollered" loud enough to be heard one hundred feet; that the light did not stop, but continued to approach until put out by the explosion; that after the explosion they went up to the place and found appellee there, and that if he had stopped when they first "hollered" he would have been safe. Appellee denies that he heard any warning expression of any kind, until just at the time of the explosion.

The only controverted questions of facts in the case are whether appellant exercised reasonable care and diligence under the circumstances, to warn appellee of the impending danger; whether appellee did in fact hear such warning as was given, and if not, then whether his failure to hear it resulted from want of ordinary care and caution on his part, under the circumstances; and as to the character and extent of appellee's injuries.

We are of opinion that the state of evidence disclosed in this record is such as to warrant the jury in resolving all these questions of fact in favor of appellee, as by their verdict they did. In coming to this conclusion we have not overlooked counsel's contention that the timbermen in charge of the work gave ample warning; that if appellee did not have or heed the warning given, it was because of his own negligence; and that the evidence does not prove such injury as will warrant the amount of damages given by the verdict.

As to the state of the evidence concerning the warning, it must be borne in mind that both the timbermen went forward in the entry from thirty to forty feet beyond the charges nearest the face, that the charges were from ten to twelve feet apart, one of the timber-

men makes it twenty-five feet, that appellee was coming from the opposite direction, that the timbermen say he was from fifty to sixty feet from the charge nearest to him and farthest from them, when they saw the approaching light and shouted "fire," "stop" and "stay there," that they say this shouting could be heard one hundred feet away. At this time, according to their statement, appellee was at the very limit, if not beyond range of this warning, assuming that it was given as they said. Appellee states that he did not hear it, and his conduct corroborates his statement; a witness on behalf of appellee states that he was 60 to 75 feet away from the point of the explosion and that he did not hear any warning; one of appellant's witnesses states that he was from 90 to 115 feet from where the timbermen stood and heard them "holler" "fire," "fire," twice about two minutes before the explosion, and that there was no other "hollering"; another of appellant's witnesses states that he was ten steps (about thirty feet) away from the timbermen, and heard them "holler" "fire," "fire," "fire" and say "stop the men" from coming, and stood there four or five minutes until the shots went off and they did not "holler" anymore.

It was a question of fact for the jury to determine whether the timbermen did really attempt to give all the warning they claim they did and at the time they claim; and then, if it can be assumed that the timbermen did all that they claim to have done, it still remains a question for the jury to determine, whether in leaving the approach to the point of peril, from the direction from which appellee was coming and had a right to come, wholly unguarded at that time of day and under the existing circumstances, and doing no more by way of warning than was done, this did in fact constitute the exercise of reasonable care and diligence to give warning to appellee.

With respect to the extent and character of appellee's injuries and the amount of his damages, the evi-

254    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Donk Bros. Coal & Coke Co. v. Thil.

dence tends to prove that the injuries extended almost entirely over the left side of his body, from his head and shoulders, arm, side and leg, down including the calf of his leg; that the skin was knocked off and the muscles resembled pulp; that the left arm and shoulder were the worst and in appearance resembled raw meat, and "there was no skin on it at all," and the left leg was "just spotted with pieces of solid substance in it;" that he suffered intense pain, and was laid up over a month; that his left arm is still weak, and his hearing somewhat injured; that his physician's bill was $40.

Counsel strenuously insist and contend that the trial court erred in admitting evidence of the custom or practice in that mine, that no shooting would be done in the entries or driveways until after three o'clock, or until all the ordinary workmen had left the mine. Counsel base this contention upon the fact that there is no averment in the declaration of any such custom or practice. They say this is elementary.

It is true that the declaration does not set up such custom or practice and count upon it as a basis of recovery; it is not pleaded at all. But this does not militate against the right to prove it as an evidentiary fact tending to prove an ultimate pleaded fact, or as an evidentiary fact tending to prove a fact that tends to prove an ultimate pleaded fact, the same as any other fact, condition, or circumstance tending to prove an ultimate pleaded fact may be proven without itself being pleaded. One is not required to plead his evidence, only in so far as it is necessary to do so to fully charge the ultimate facts upon which a recovery is claimed, or a defense is based. This evidence was entirely competent as one of the conditions or circumstances tending to prove the ultimate pleaded fact, that appellee was in the exercise of reasonable care and caution for his own safety. With knowledge of this custom or practice in his mind, appellee would not be required to go along the entry with as sharp a lookout for this particular danger, or to listen as intently

for some warning of its presence, as would be the case if such custom or practice did not exist.

The two instructions given on behalf of appellee are both challenged, and both criticised by counsel. We are of opinion that they were both properly given. They have both been repeatedly approved by both the Appellate Courts and the Supreme Court, in cases where the state of pleading and evidence did not differ in any material respect from the case at bar.

Appellant's refused instruction "B" directs the jury to disregard the evidence as to custom or practice not to shoot in the entries or roadways during the regular working hours. This question is fully discussed above, and we are of opinion the court did not err in refusing this instruction. With respect to instructions "C" and "D," refused by the court, counsel contend that appellee and the timbermen were fellow-servants, as a matter of law, and that the trial court should have so held and directed a verdict in favor of appellant, and that if this be not true, still the court ought to have given these instructions, submitting that question to the jury. The trial court did not err in its holdings with respect to the question as to the fellow-servants. The fellow-servant rule has no application to the case. It is neither involved in the pleading nor in the evidence. The declaration does not charge mere negligence, it charges breach of duties that cannot be delegated to any servant, and the evidence proves every material fact in the declaration. The Supreme Court has very recently had a case under consideration very analogous both in facts and in principle to this case. It is the case of Rogers v. C., C., C. & St. L. Ry. Co., 211 Ill. 126. In that case the court says: It was defendant's "duty to use reasonable diligence to warn the deceased of danger, and that duty was one which it could not relieve itself of by directing his fellow-servant to perform it. It being a duty owed by the master to the servant, it could not delegate that duty to another, even though a fellow-servant of the

256    APPELLATE COURTS OF ILLINOIS.

deceased, and absolve itself from liability for the injury, resulting in consequence of the failure to communicate knowledge to deceased of the increased hazard." And to the same effect is the still more recent case of Illinois Steel Company v. Ziemkowski, 220 Ill. 324.

We find no reversible error in this record. The judgment of the Circuit Court is affirmed.

*Affirmed.*