[No. 30680. Department One. January 20, 1949.]

DELORES CARBERY et al., *Respondents*, v. FIDELITY SAVINGS & LOAN ASSOCIATION, *Appellant*.[1]

[1]Reported in 201 P. (2d) 726.

*H. Earl Davis,* for appellant.

*Geo. W. Young,* for respondents.

BEALS, J.—The defendant, Fidelity Savings and Loan Association, a corporation, owned and operated the Ziegler office building in the city of Spokane. The plaintiffs, R. E. Carbery and Delores Carbery, were husband and wife, the plaintiff Delores Carbery being in the employ of Sterling Dentists, a firm occupying space on the second floor of the Ziegler building.

The defendant maintained an elevator which was operated by an attendant, who opened and closed the manually-operated, sliding doors, permitting ingress and egress to and from the elevator. One of these doors was to the south of the elevator, another, on the second floor, to the north side. The south door was used on the street floor corridor, and the north door was used for exit or entrance on the second floor. The appliance controlling the elevator was in the center of the west side thereof, near which stood the person operating the elevator and the doors. On the street floor, the door opened to the east, or away from the elevator, while on the second floor the door opened toward the west.

At about eight o'clock on the morning of July 3, 1947, plaintiff Delores Carbery entered the building, on her way

to the offices of her employers on the second floor. She entered the elevator, in which there was one other passenger, Charles F. Hafer, and the elevator ascended. Upon arrival at the second floor, the operator of the elevator caused the door to open, whereupon Mrs. Carbery, who was standing facing the door and about twelve or fourteen inches therefrom, started to leave the elevator. While doing so, she either walked into, or was struck by, the elevator door, suffering physical injuries.

The plaintiffs, contending that these injuries were suffered because of the negligence of defendant's employee who was operating the elevator, instituted this action for recovery of damages suffered by Mrs. Carbery as the result of the accident.

In their complaint, the plaintiffs alleged that, while Mrs. Carbery was in the act of passing through the doorway, the operator carelessly and negligently permitted the door to close against her, the door striking the left side of her head with great violence, causing the injuries of which plaintiffs complain. Plaintiffs demanded damages in the sum of $10,-150.

By its answer, the defendant denied the material allegations of the complaint and affirmatively pleaded that any injuries suffered by Mrs. Carbery were the result of her own negligence, and that defendant's employee who was operating the elevator was guilty of no negligence whatever.

The plaintiffs replied, denying the affirmative allegations contained in the answer.

The cause was tried to a jury, which returned a verdict in favor of the plaintiffs. Defendant's motions for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial having been denied, the court entered judgment on the verdict in plaintiffs' favor and against the defendant, from which judgment the defendant has appealed.

Appellant assigns error upon the court's ruling permitting, over appellant's objection, three of respondents' witnesses to answer hypothetical questions propounded by

respondents' counsel; upon the giving of one instruction by the court, to which appellant excepted; upon the court's order denying appellant's motion for judgment in its favor notwithstanding the verdict, and upon the denial of appellant's motion for a new trial. Finally, appellant assigns error upon the entry of the judgment in respondents' favor.

From a photograph which was introduced in evidence, taken from the second floor and showing the north side of the elevator, it appears that that portion of the side of the elevator shaft which constituted the door through which persons would enter or leave the elevator, was divided into three sections, two movable (comprising the door itself) and one fixed. Approximately the lower two fifths of each portion was solid metal, the upper three fifths being also metallic, but in open grillwork. The immovable portion of the north side of the shaft extended from the west side thereof about one third of the width of the elevator, the exit comprising the remaining two thirds thereof, the movable door being in two sections, on parallel tracks, opening toward the west side of the door. The movable portions of the door were manually operated by the person in charge of the elevator. The record does not clearly disclose the physical construction of the elevator and the means of exit therefrom.

The evidence was in dispute. Mrs. Carbery (whom we shall hereafter refer to as respondent) testified that the operator opened the door for her at the second floor, that she started to leave the elevator, and that the door closed on her, striking the side of her head as she was stepping into the hall.

Appellant introduced evidence to the effect that respondent hurriedly started to leave the elevator before the door was fully open, her head striking the edge of the door as she was leaving the elevator.

We shall first consider appellant's assignment of error based upon instruction No. 10, which the trial court gave to the jury as follows:

"I have heretofore instructed you that with a single exception negligence is never presumed. I will now explain the single exception I have referred to.

"When a thing which causes injury is shown to be under the management and control of the person or corporation charged with negligence, and the accident is such as in the ordinary course of things does not happen, if those who have the management and control thereof use the proper degree of care, then the happening of said accident affords reasonable evidence, in the absence of explanation by the person or corporation charged with negligence, that the accident arose from the want of the proper care on the part of such person or corporation.

"If you find from a preponderance of the evidence in this case that at the time and place in question the elevator door was closed upon the plaintiff, Delores Carbery, riding as an invitee thereon and that the closing of said elevator door upon a passenger was such a thing as would not in the ordinary course of events, happen if those who had the control, supervision and operation thereof had used the highest degree of care for the safety and protection of passengers, then I instruct you that you may infer from the fact that such door did close upon said Delores Carbery that this was due to negligence of the operator of said elevator, and a prima facie case is thereby established in favor of the plaintiffs.

"The burden then devolves upon the defendant to furnish an explanation or rebuttal of such prima facie case by producing evidence of the use of the highest degree of care under the circumstances and conditions necessarily within defendant's exclusive control. If, then, after considering such explanations of the whole case, and of all the issues as to negligence, injury and damages, the evidence still preponderates in favor of plaintiffs, then plaintiffs are entitled to recover, unless you further find that said Delores Carbery was guilty of contributory negligence."

Appellant excepted to this instruction, and, based upon its exceptions, argues that, by the instruction, the doctrine of *res ipsa loquitur* was wrongfully projected into the case, and that the giving of the instruction constitutes reversible error.

Paragraph No. 3 of the complaint reads as follows:

"That on or about the 3rd day of July, 1947, at or about the hour of eight o'clock a. m. the plaintiff, Delores Carbery,

entered said Ziegler Building and the elevator therein provided for the use of tenants and employees of said building for the purpose of going to her place of employment located therein. That when she had arrived at the second floor thereof, the elevator operator opened said door, extending to her an invitation to emerge therefrom. That while she was in the act of passing through said elevator door, the operator thereof carelessly and negligently permitted the same to close against her, striking the left side of her head with great force and violence, thereby causing her to suffer injuries more particularly alleged hereinafter."

The complaint then alleged that respondent was injured as the result of a negligent act committed by appellant's agent, the operator of the elevator, the alleged act of negligence being specifically described in the complaint. The complaint does not allege that the door through which respondent would leave the elevator, or the mechanical appliance operating the same, was anywise defective, but alleged that the operator of the elevator carelessly and negligently permitted the door to close against respondent, striking the left side of her head with great violence.

Respondent frankly states that the court's instruction No. 10 was "a conventional statement of the doctrine of *res ipsa loquitur.*"

In support of the allegations of her complaint, above quoted, respondent testified:

"Q. Did the operator of the elevator make any statement to you concerning how this occurrence was brought about? A. Yes, he did. Q. All right. Now, what did he tell you? A. Well, it was after the two weeks that I had went back to work, and I was going up in the elevator again that morning, and Mr. Wilson told me how sorry he was that this had happened, and he stopped on the second floor and he showed me—pulled the door open and showed how the catch in the door did not work, and how it had slipped out of his hands, and he said he was awfully sorry that it had happened. Q. Mr. Wilson is the elevator operator? A. Yes, he is."

On cross-examination, respondent testified that the door was completely open before she started to leave the elevator; that, while she was leaving the elevator, something (at the time she did not know what) hit her; that she did

not fall; that she reached her employers' office, but did not know how she arrived there and remembered nothing further until she regained consciousness and found herself lying on a couch in the office. The witness also testified that the elevator was properly stopped, level with the floor of the hall.

Respondent R. E. Carbery testified that, after his wife's injury, he went down to the building to inquire about the accident, and talked to the operator of the elevator, who

". . . explained how the car—how he had arrived at the second floor and started to open the door, and that the next thing he knew the door slammed closed. Q. Did he say— What, if anything, did he say with reference to the door striking your wife? A. Well, he explained to me at that time— He didn't exactly say to me that it struck her. He just explained to me how the door slid closed and that was about all he knew about it. Whether it is his fault or anybody else's, he said he would not say that."

Olga Lelander, testifying on behalf of respondent, stated that she was respondent's fellow employee, and a registered nurse; that, shortly after the accident, she saw respondent lying on the davenport in the office, and that she called a cab and, with assistance, took respondent to the latter's home. The witness was later called to the stand by respondent for further examination and testified that, when she returned to the Ziegler building, Mr. Wilson, the elevator operator, spoke to her, the witness relating the following conversation, opened by Mr. Wilson:

" 'Did you get Del [respondent] home all right?' And I said 'Yes,' and he says, 'I am so sorry that the elevator door slipped out of my hand and hit her head.' He says, 'I have never been so sorry for anything in my life,' and he says, 'I apologize to Del.' "

Called as a witness by appellant, in answer to a question concerning the accident, Mr. Wilson testified:

"Well, Mrs. Carbery went to get out of the elevator. I went to open the door and it wasn't open wide enough, and she always had the habit of standing with her head down, like that (witness illustrating), and barging right straight out of the elevator, and the door wasn't open wide

enough, and she hit her head on the side. Q. She hit her head on the side of the door? A. Yes, sir. Q. Did you say she had a habit of doing that? A. Yes, sir. She always went out of the elevator in that— Q. (Interposing) In a hurry? A. Yes. Q. In this particular instance were you in the process of opening the door at the time she went out? A. Yes, sir. Q. Is that right? A. Yes, sir. Q. After that had happened,—the door went on open, did she get out of the elevator? A. Yes, sir. Q. Did she fall to the floor? A. No, sir. Q. Did you observe her go into the Sterling Dentists? A. Yes, sir. Q. On her own power? A. She was headed that way when the elevator started up. Q. When you started up? A. Yes. Q. Did you believe at that time that she had sustained any injury? A. No, sir. Q. Did she put her hand to her head or anything of that kind? A. Yes, sir; I believe she did. Q. Did she say anything to you? A. She said she hurt her head. Q. And then went on her way? A. Yes, sir."

Charles F. Hafer, called by appellant, testified as follows:

"Q. Now, Mr. Hafer, did you— Would you tell the jury just what happened when the elevator came to the level at the second floor, please, with reference to Mrs. Carbery? A. Well, this young lady, it seems to me she started to leave the elevator just before the door was open and, of course, she collided with the door. Q. How far was the door open? A. Well, those doors are split doors. They are in two sections, and I think the door—this one door had not gotten quite over where it should be when she started out. . . . Q. (By Mr. Davis) State, when she started out, whether the elevator door was completely open. A. No, it was not. Q. Did you see her at any time after that? A. I did not. Q. Did you see her as— Did she fall to the floor or did she go on into the Sterling Dentists' office? A. No. She stayed there for a minute and held her hand to her head, and then she left and went on into the— Q. (Interposing) Did she make any remarks? A. No, she did not."

■ Unless the issues in an action such as this present a general charge of negligence, which is not fully explained, there is no place for the application of the doctrine of *res ipsa loquitur*. This doctrine brings into operation an inference or presumption of negligence, when it is alleged that the plaintiff suffered injury as the result of the operation of an instrumentality under the exclusive control of the

defendant, the injury having been occasioned by some unexplained cause, and the general situation showing that no injury would have resulted, in the ordinary course of events, without some negligence on the part of the defendant. If the injury suffered was the result of an explained cause or some specific act of negligence on the part of the defendant, which act is definitely described, there is no place for inference and the doctrine of *res ipsa loquitur* does not apply.

While the authorities are not harmonious, the foregoing rule has been very generally followed, and this court has approved this principle in the following cases: *Anderson v. Northern Pac. R. Co.*, 88 Wash. 139, 152 Pac. 1001, L. R. A. 1917F, 1020, *Anderson v. Harrison*, 4 Wn. (2d) 265, 103 P. (2d) 320, *Wellons v. Wiley*, 24 Wn. (2d) 543, 166 P. (2d) 852.

In the case of *Pacific Coast R. R. Co. v. American Mail Line*, 25 Wn. (2d) 809, 172 P. (2d) 226, we held that the evidence was insufficient to bring the case within the scope of the doctrine of *res ipsa loquitur*. In the course of the opinion, we said:

"The authorities, both texts and decided cases, agree that, before the doctrine of *res ipsa loquitur* can be applied, the facts and attending circumstances must appear. This court has held that the doctrine is of limited scope and sparingly applied. Almost all other courts which apply the doctrine at all have followed that principle."

In the recent case of *Morner v. Union Pac. R. Co.*, 31 Wn. (2d) 282, 196 P. (2d) 744, the application of the doctrine of *res ipsa loquitur* was considered, and reference was made to many of our decisions. In the course of the opinion, we said:

"This doctrine constitutes a rule of evidence peculiar to the law of negligence and is an exception to, or perhaps more accurately a qualification of, the general rule that negligence is not to be presumed, but must be affirmatively proved. By virtue of the doctrine, the law recognizes that an accident, or injurious occurrence, may be of such nature, or may happen under such circumstances, that the occurrence is of itself sufficient to establish *prima facie* the fact of negligence on the part of the defendant, without further

or direct proof thereof, thus casting upon the defendant the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part. [Citing authorities.]

"The doctrine of *res ipsa loquitur* is based in part upon the theory that the defendant, having the sole and exclusive charge of the agency or instrumentality which caused the injury, knows the cause of the accident, or injurious occurrence, or has the best opportunity of ascertaining it, and should, therefore, be required to produce the evidence in explanation thereof, while, on the other hand, the plaintiff has no such knowledge and is, therefore, compelled to allege negligence in general terms and to rely upon proof of the happening of such occurrence to establish negligence."

The opinion then discusses authorities which support the proposition stated.

The principle that "whether or not the doctrine is applicable in a specific instance depends upon the peculiar facts and circumstances of the individual case," and the rule that the scope of the doctrine is limited, "and ordinarily it is to be sparingly applied, in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential," were approved.

In several of our decisions, an instruction on the doctrine of *res ipsa loquitur* has been approved. See *Mahlum v. Seattle School Dist. No. 1,* 21 Wn. (2d) 89, 149 P. (2d) 918, and *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157. In other cases, we have held that the doctrine applied to situations disclosed by the evidence.

In the case at bar, the issues were clearly presented by the pleadings and by the evidence. Respondent relied upon the negligent act of the operator of the elevator in allowing the door, after it had been fully opened, to close upon respondent as she was passing through the doorway. On the other hand, appellant contended that respondent had started to leave the elevator too soon, and had negligently collided with the door before it was fully opened.

If the door had been opened to its full extent and, through negligence of the operator, had been allowed to close and strike respondent, a verdict in respondent's favor would,

in the absence of other factors, be deemed supported by evidence. On the other hand, if respondent had started to leave the elevator before the door was fully opened, and had struck the door in passing, the jury might well have found that respondent was injured as the result of her own negligence.

The record contains evidence in support of either theory. No evidence was introduced even suggesting that the elevator apparatus was, in any manner, defective, respondent relying upon the active negligence of the operator, as shown by statements which respondent's witnesses testified that he made after the accident.

It should be noted that, by the second major paragraph of the instruction above quoted, the court told the jury that if they should find, from a preponderance of the evidence, that the elevator door was closed upon the plaintiff, and that the closing of the elevator door upon a passenger

" . . . was such a thing as would not in the ordinary course of events, happen if those who had the control, supervision and operation thereof had used the highest degree of care for the safety and protection of passengers, then I instruct you that you may infer from the fact that such door did close upon said Delores Carbery that this was due to the negligence of the operator of said elevator, and a prima facie case is thereby established in favor of the plaintiffs."

By this portion of the instruction, the court told the jury that, subject to the other portions of the instruction, they might infer, from the fact that the door did close upon respondent, that this was due to the negligence of the operator.

It is not disputed that respondent and the elevator door collided during her exit from the elevator. Respondent introduced evidence to the effect that the operator had stated that the door had slipped from his control. Appellant introduced direct evidence to the effect that respondent had started from the elevator before the door was completely open and had run into the door. A disputed question of fact was squarely before the jury for determination.

By the instruction complained of, the court told the jury that, under the circumstances stated in the instruction, they might infer negligence on the part of the elevator operator.

There was no evidence to the effect that the appliance used in opening and closing the door was defective in any way, or that it had broken or failed to function properly during the operation in question. Had there been such evidence, an instruction on the doctrine of *res ipsa loquitur* might have been appropriate; but, by the instruction complained of, the court permitted the jury to go beyond the direct evidence and infer negligence on the part of the operator.

Under the evidence before the jury, there was no proper basis for such an instruction, and the instruction was erroneous and prejudicial, as inviting speculation concerning unknown causes, not disclosed by the evidence, which resulted in the injuries suffered by respondent.

Appellant also assigns error upon the court's ruling permitting two witnesses, called by respondent, to answer hypothetical questions propounded by respondent and objected to by appellant's counsel. These witnesses were chiropractic practitioners, licensed to practice as such within the state of Washington. Some of appellant's objections are based upon the fact that one of the witnesses was permitted by the court, over appellant's objection, to answer hypothetical questions before any other evidence had been introduced. Appellant directs other arguments against the form of the questions which were propounded to the witnesses. Appellant also objected to certain questions upon the ground that the witnesses, not being medical experts but being licensed as chiropractors only, were not qualified to express expert opinions in response to the questions asked.

Some close questions are presented by the arguments contained in the briefs; but, in view of the fact that the case must be remanded for a new trial, a detailed discussion of these matters is unnecessary, as different questions may be propounded to witnesses on the retrial of the action.

Appellant also assigns error upon the court's ruling permitting the testimony of John M. Lambert, M. D., who was called as a witness by respondent and testified as a specialist in neurology and psychiatry. The witness had not treated respondent, but had examined her a week prior to the date of the trial.

We consider it unnecessary to discuss this assignment of error, as Dr. Lambert may not be called as a witness on the retrial of the action, and, if he is called to testify again, different questions may be propounded to him.

In view of our opinion that the judgment appealed from must be reversed for the reasons above stated, it is unnecessary to discuss appellant's remaining assignments of error.

Because of the error above discussed, in giving the court's instruction No. 10, the judgment appealed from is reversed, and the cause remanded for a new trial.

JEFFERS, C. J., MALLERY, and STEINERT, JJ., concur.

HILL, J., concurs in the result.