[No. 72554-3. En Banc.]

Argued February 27, 2003.    Decided May 22, 2003.

KEITH A. PACHECO, *Petitioner*, v. JOHN R. AMES, *Respondent*.

*Patrick K. Fannin* (of *Keith S. Douglass & Associates*), for petitioner.

*John C. Versnel III* and *James M. Owen, Jr.* (of *Lawrence & Versnel*), for respondent.

*Martha E. Raymond* and *Shilpa Bhatia* on behalf of Washington Defense Trial Lawyers, amicus curiae.

ALEXANDER, C.J. — A Spokane County Superior Court jury awarded Keith A. Pacheco damages for an injury he sustained while he was undergoing oral surgery performed by Dr. John R. Ames, D.D.S. The Court of Appeals reversed the judgment that was based on the jury verdict, concluding that the trial court improperly instructed the jury on the doctrine of res ipsa loquitur. Pacheco challenges that decision, asserting that he (1) satisfied the elements of the res ipsa loquitur doctrine, and (2) properly relied on the doc-

trine, notwithstanding the fact that Dr. Ames offered testimony which explained how the injury could have occurred without negligence. We agree with Pacheco and reverse the Court of Appeals.

I

In August 1996 Keith Pacheco was diagnosed by his dentist, Dr. Thomas Whitfield, D.D.S., with three impacted wisdom teeth. Whitfield referred Pacheco to an oral surgeon, Dr. John Ames, D.D.S, for extraction of the teeth. The teeth which were to be removed were the two upper wisdom teeth and the lower right wisdom tooth, designated numbers 1, 16, and 32, respectively. Before the surgery took place, Whitfield sent Ames a Panorex x-ray[1] of Pacheco's teeth. In one corner of the x-ray there was a mark which Ames later stated he may have interpreted as an "LR" meaning "lower right." Partial Verbatim Report of Proceedings (RP) at 100.

Ames performed the oral surgery on September 23, 1996. During the surgery Pacheco was under general anesthetic and was, thus, unconscious. After Ames removed teeth numbers 1 and 16, he drilled in the back of Pacheco's mouth on the lower left side in the location where a tooth number 17 would lie. Pacheco did not have a tooth number 17. As a result of the "negative exploration" by Ames, the nerve in Pacheco's lower left jaw was injured. Clerk's Papers at 70. After realizing that there was no wisdom tooth 17, Dr. Ames removed tooth number 32 on the lower right side of Pacheco's mouth.

A few days later Pacheco returned to Dr. Ames's office for a follow-up appointment. Pacheco reported to Ames that his lower left jaw and lip were numb. Ames then advised Pacheco that he had drilled on the wrong side of his jaw, indicating that there was "a possibility that the x-ray might

---

[1] A Panorex x-ray covers the teeth and major jaw structures giving the "big picture" as opposed to the dental x-rays which show only the fine details of one or two teeth. Clerk's Papers at 57.

have been mislabeled, too," due to the mark on the x-ray. RP at 183.

Pacheco, who claimed that he had continued to experience numbness in an area of his jaw, chin, and lip, brought suit against Dr. Ames in Spokane County Superior Court.[2] At trial, the judge instructed the jury over Ames's objection, as follows:

> When an agency or instrumentality which produces injury or damage is under the control of a defendant at the time of injury or damage to the plaintiff and the injury or damage which occurred would ordinarily not have resulted if the defendant had used ordinary care, then, in the absence of a satisfactory explanation, you may infer, but you are not required to infer, that the defendant was negligent.

RP at 280.

The jury returned a verdict for Pacheco for $52,500. Thereafter the trial judge entered a judgment against Ames for the amount of the jury's verdict plus costs. Ames appealed to Division Three of the Court of Appeals, which reversed, concluding that the trial judge should not have given a res ipsa loquitur jury instruction because (1) the instrumentality causing the injury was not in the exclusive control of the defendant, and (2) the doctrine of res ipsa loquitur is not applicable " 'when there is evidence that the action could occur without negligence on the defendant's part.' " *Pacheco v. Ames*, 110 Wn. App. 912, 918, 43 P.3d 535 (2002) (quoting *Kimball v. Otis Elevator Co.*, 89 Wn. App. 169, 177, 947 P.2d 1275 (1997)).

We granted Pacheco's petition for review at 147 Wn.2d 1015, 56 P.3d 992 (2002). The Washington Defense Trial Lawyers Association was then permitted to submit an amicus curiae brief. Since the wording of the jury instruction was not challenged by Dr. Ames, the broad question before us is whether the trial court erred in presenting the jury with an instruction on the doctrine of res ipsa loquitur.

---

[2] Dr. Whitfield was also named as a defendant. The resolution of the claim against Whitfield is not revealed by the record before us.

## II

■ The doctrine of res ipsa loquitur spares the plaintiff the requirement of proving specific acts of negligence in cases where a plaintiff asserts that he or she suffered injury, the cause of which cannot be fully explained, and the injury is of a type that would not ordinarily result if the defendant were not negligent. In such cases the jury is permitted to infer negligence. *Miller v. Kennedy*, 91 Wn.2d 155, 159-60, 588 P.2d 734 (1978); *Douglas v. Bussabarger*, 73 Wn.2d 476, 482, 438 P.2d 829 (1968) (citing *Pederson v. Dumouchel*, 72 Wn.2d 73, 81, 431 P.2d 973 (1967)); *Kemalyan v. Henderson*, 45 Wn.2d 693, 702, 277 P.2d 372 (1954). The doctrine permits the inference of negligence on the basis that the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person. *Covey v. W. Tank Lines*, 36 Wn.2d 381, 390, 218 P.2d 322 (1950); *see also Hogland v. Klein*, 49 Wn.2d 216, 219, 298 P.2d 1099 (1956).

■■ Ames argued successfully at the Court of Appeals that the doctrine of res ipsa loquitur was inapplicable in this case and that an instruction on the doctrine, therefore, was improperly submitted to the jury. Whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law. *Zukowsky v. Brown*, 79 Wn.2d 586, 592, 488 P.2d 269 (1971); *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 196 P.2d 744 (1948). We review questions of law de novo. *Griffin v. W. RS, Inc.*, 143 Wn.2d 81, 87, 18 P.3d 558 (2001).

■ We have repeatedly stated that res ipsa loquitur is applicable only when the evidence shows

"(1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff."

*Zukowsky*, 79 Wn.2d at 593 (quoting *Horner v. N. Pac. Beneficial Ass'n Hosps.*, 62 Wn.2d 351, 359, 382 P.2d 518 (1963)).

For the sake of simplicity, we address the elements in reverse order, noting quickly that the third element is not in question. We say that because both parties agree that Pacheco was under the effects of an anesthetic during the operation. Thus, he could not have contributed to the injury that he sustained.

■■ The second element is satisfied by a showing that Ames had exclusive control over the instrumentality which actually caused Pacheco's numbness. *See Morner*, 31 Wn.2d at 294; *Zukowsky*, 79 Wn.2d at 593.

> The reason for the prerequisite of exclusive control of the offending instrumentality is that the purpose of the rule is to require the defendant to produce evidence explanatory of the physical cause of an injury which cannot be explained by the plaintiff. If the defendant does not have exclusive control of the instrumentality producing the injury, he cannot offer a complete explanation, and it would work an injustice upon him to presume negligence on his part and thus in practice demand of him an explanation when the facts indicate such is beyond his ability.

*Morner*, 31 Wn.2d at 296.

The Court of Appeals agreed with Ames's assertion that the x-ray was the instrumentality which caused the injury to Pacheco's jaw. It reached this conclusion, despite the fact that the record showed that both Ames and Dr. George Kushner, M.D., Pacheco's expert witness, testified that the actual cause of Pacheco's injury was the negative exploration with a drill in an area of Pacheco's mouth where there was no tooth. While Ames offered the x-ray as a likely explanation for why he explored with the drill on the wrong side of Pacheco's mouth, it is obvious that the x-ray did not cause the injury. In our view, the x-ray was not the instrumentality which caused Pacheco's injury. Rather, it was the act of drilling on the wrong side of Pacheco's mouth.

Our conclusion is supported by *Morner v. Union Pacific Railroad*, 31 Wn.2d 282. There, the plaintiffs were passengers in an automobile that collided with a truck. The record showed that the collision occurred at a point on a highway where, at the time, both vehicles were enveloped in a cloud of steam which emitted from a railroad locomotive that was traveling on a track adjacent to the highway where the collision occurred. The passengers sought damages from the railroad company invoking the doctrine of res ipsa loquitur. In addressing the cause of the injury, our court determined that

> it is pertinent to observe here that the injuries of which respondents complain were not sustained immediately and directly through contact with, or operation of, the locomotive itself, nor by contact with the steam which the locomotive emitted upon the adjacent highway. The injuries to them were the direct and immediate result of a collision between the two motor vehicles operating independently of the locomotive. Whether the steam be regarded merely as a condition, or whether it be considered to be a proximate cause of the collision, the fact is that respondents' injuries resulted directly and solely from a collision between the Ford coupe and the truck.

*Morner*, 31 Wn.2d at 294.

Here, Ames could not state with certainty that he reviewed the x-ray and for that reason drilled on the wrong side of Pacheco's jaw. The role the x-ray played, if any, in the injury is unclear. What is clear is that it was the drill which was the direct and immediate cause of Pacheco's injury, and that Ames had exclusive control over the drill.

■ The first element, that the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, is satisfied when one of three conditions exist:

> "(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, *i.e.*, leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observa-

tion of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries."

*Zukowsky*, 79 Wn.2d at 595 (quoting *Horner*, 62 Wn.2d at 360 and citing *Pederson*, 72 Wn.2d 73).

■ It is at least arguable that an oral surgeon's act of drilling on the wrong side of a patient's mouth is akin to a surgeon's amputation of the wrong limb. We need not decide that question, however, because we are satisfied that the second condition is met. In other words, we conclude that it is within the general experience of mankind that the act of drilling on the wrong side of a patient's jaw would not ordinarily take place without negligence. This statement is particularly true here if the jury did not accept Ames's explanation that it was his reliance on Whitfield's x-ray, which he asserts was mislabeled, which caused him to drill in the wrong place.

■ Being satisfied that the record supports all the elements of res ipsa loquitur we turn, finally, to consideration of the question of whether the res ipsa loquitur doctrine has no place in a case where " 'there is evidence that the action could occur without negligence on the defendant's part.' " *Pacheco*, 110 Wn. App. at 918 (quoting *Kimball*, 89 Wn. App. at 177). The Court of Appeals, relying on its decision in *Kimball v. Otis Elevator Co.*, 89 Wn. App. 169, 177, concluded that res ipsa loquitur does not apply in such cases. Dr. Ames endorses that conclusion, asserting that the doctrine of res ipsa loquitur is inapplicable here because the cause of Pacheco's injury is known. Suppl. Br. of Resp't at 5. Ames bases his contention on the fact that he offered testimony which provided an explanation for Pacheco's injury, to wit that it was his nonnegligent interpretation of Dr. Whitfield's x-ray which resulted in his act of drilling on the wrong side of Pacheco's jaw. *Id.* at 6.

We have on numerous occasions examined the applicability of res ipsa loquitur where evidence is presented which may explain how an injury occurred. We have held that a jury instruction invoking the doctrine of res ipsa loquitur is

inapplicable where there is evidence that is *completely* explanatory of how an accident occurred and no other inference is possible that the injury occurred another way. *Kemalyan*, 45 Wn.2d at 705 (citing *Covey*, 36 Wn.2d at 391; *Morner*, 31 Wn.2d 282; *Anderson v. Harrison*, 4 Wn.2d 265, 103 P.2d 320 (1940)); *see also Hogland*, 49 Wn.2d at 219-20; *but cf. Engen v. Arnold*, 61 Wn.2d 641, 647, 379 P.2d 990 (1963). That rule, which we reaffirm, is narrower than that enunciated by the Court of Appeals because it defeats res ipsa loquitur only where an inference is not possible, and thus there is nothing upon which the doctrine can operate. *Covey*, 36 Wn.2d at 391. The Court of Appeals decision here, on the other hand, is broader in that it would defeat the doctrine of res ipsa loquitur in cases where the defendant offers *some* evidence explaining the injury.

In adopting the rule that the doctrine of res ipsa loquitur is inapplicable only where the evidence *completely* explains the plaintiff's injury, we have noted that a plaintiff is not bound by the testimony of the defendant or his witnesses. Thus, the plaintiff may be entitled to rely on the res ipsa loquitur doctrine even if the defendant's testimony, if believed by the jury, would explain how the event causing injury to the plaintiff occurred. *Kemalyan*, 45 Wn.2d at 704 (citing *Nopson v. Wockner*, 40 Wn.2d 645, 245 P.2d 1022 (1952); *Covey*, 36 Wn.2d 381; *D'Amico v. Conguista*, 24 Wn.2d 674, 167 P.2d 157 (1946); *Mahlum v. Seattle Sch. Dist. No. 1*, 21 Wn.2d 89, 149 P.2d 918 (1944); *Case v. Peterson*, 17 Wn.2d 523, 136 P.2d 192 (1943)). In particular, a res ipsa loquitur instruction should not be denied to a plaintiff when all of the elements for application of the doctrine are present although there is evidence offered to explain the incident. *Brown v. Dahl*, 41 Wn. App. 565, 582, 705 P.2d 781 (1985) (citing *ZeBarth v. Swedish Hosp. Med. Ctr.*, 81 Wn.2d 12, 499 P.2d 1 (1972)). Even where the defendant offers weighty, competent and exculpatory evidence in defense, the doctrine may apply. *ZeBarth*, 81 Wn.2d at 22; *see also Siegler v. Kuhlman*, 81 Wn.2d 448, 451-53, 502 P.2d 1181 (1972). In sum, the plaintiff is not

required to " 'eliminate with certainty all other possible causes or inferences' " in order for res ipsa loquitur to apply.[3] *Douglas*, 73 Wn.2d at 486 (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 222 (3d ed. 1964)).

*Kemalyan v. Henderson*, 45 Wn.2d 693, is especially instructive here. The facts there were that the plaintiff underwent surgery to have her tonsils removed. During the application of an anesthetic, and while the plaintiff was unconscious, her stomach filled with the ether used as an anesthetic. This resulted in the plaintiff suffering significant pain and an extended hospital stay. The defendant doctors argued that because they offered evidence from which the jury could have concluded that the injuries to the plaintiff were caused by a specific act of negligence, a res ipsa loquitur instruction was improper and the giving of it was reversible error. Faced with these facts and that argument, we held that the "plaintiff was not bound by defendant's testimony as to the cause or causes of the incident resulting in injury to herself, since that testimony did not so clearly explain how the injury occurred that the minds of reasonable men could not differ on the issue." *Id.* at 705.

We see no reason to take another view now. In our judgment, it makes little sense to deny an instruction on the doctrine of res ipsa loquitur simply because the defendant offers evidence that provides a possible explanation of the event. As noted above, the res ipsa loquitur doctrine allows the plaintiff to establish a prima facie case of negligence when he cannot prove a specific act of negligence because he is not in a situation where he would have knowledge of that specific act. Once the plaintiff establishes a prima facie case, the defendant must then offer an explanation, if he can. " 'If then, after considering such explanation, on the whole case and on all the issues as to negligence, injury and damages, the evidence still prepon-

---

[3] Applicability of res ipsa loquitur also does not prevent the plaintiff from pleading or proving specific acts of negligence by the defendant. *Covey*, 36 Wn.2d at 391.

derates in favor of the plaintiff, plaintiff is entitled to recover; otherwise not.'" *Covey*, 36 Wn.2d at 392 (quoting *Hardman v. Younkers*, 15 Wn.2d 483, 493, 131 P.2d 177 (1942)). If the doctrine of res ipsa loquitur were inapplicable when a defendant offered a possible explanation that was not completely explanatory of the cause of the injury, and the plaintiff could not establish a prima facie case of negligence because he or she does not know how the injury was caused, then the defendant could avoid liability by simply submitting evidence of a possible cause of the injury. This would be the case notwithstanding the fact that the plaintiff has shown all of the above-stated elements of the doctrine of res ipsa loquitur. Such a result would allow the defendant to escape responsibility where an inference of negligence is the only tool with which the plaintiff may prove his or her case.

Fundamentally, the Court of Appeals erred in concluding that the cause of Pacheco's injury was fully explained. It said:

> The facts leading up to [Pacheco's] injury are all well known and essentially undisputed. Dr. Ames operated on Mr. Pacheco. And this exploration into Mr. Pacheco's jaw caused the injury. Everyone agrees Dr. Ames's decision to drill in Mr. Pacheco's lower left jaw was based on his interpretation of and his reliance on the x rays taken by Dr. Whitfield. The issue is simply whether or not that conduct was professionally excusable.

*Pacheco*, 110 Wn. App. at 919 (citations omitted). The evidence before the jury belies this conclusion. It shows that Ames's explanation of the cause of the injury is simply a suggested reason. The colloquy between Pacheco's counsel and Ames, which is most telling on this score, was as follows:

> Q: . . . yesterday you testified that you don't recall interpreting the September—the x-ray, the preoperative x-ray on September 23rd, 1996; correct?
> A: I would say that would be correct.

Q: And in fact you testified yesterday that you don't recall what your thought process was regarding the interpretation of that x-ray?

A: Well, I think there was some—I think there was some discussion on that matter. In that the thought process for all our patients is basically the same, you mount the x-ray, we examine the patient, we discuss with the patient. The surgery. And complications. And we ask him if he understands what is about to happen.

. . . .

As far as the thought process of what I was looking at on that specific x-ray, I guess I would say no.

Q: Okay. And that answer would apply to the marker that we have been looking at over the last two days, your thought process regarding that, you don't recall?

A: No.

RP at 95-96.

Q: So it's fair to say, then, on September 23rd, 1996, you are assuming that you looked at that symbol; correct?

A: Yes.

RP at 128.

Q: What independent recollection, if any, do you have?

A: Well, I remember Keith [Pacheco]. I remember talking to him. And I remember the surgery. I remember—I don't remember the specifics of the surgery. It was—you know, it was almost four years ago now. But I remember Keith. And I remember—I remember talking to him, postoperative, and trying to deal with, you know, his—his numbness after the surgery. . . .

Q: Okay. Do you have a specific, any specific recollection of examining a preoperative x-ray from Dr. Whitfield on the 23rd of September, 1996?

A: No.

RP at 136.

When responding to his own counsel, Dr. Ames testified:

Q: Doctor, did you have a thought process when you interpreted that radiograph?

A: Yes.

Q: . . . . How do you know you had a thought process?

A: It just makes sense. I mean it just makes sense.

RP at 119. Whether or not Ames, in fact, relied on the x-ray supplied by Whitfield in deciding to drill on the wrong side of Pacheco's mouth is not so clear that one can say that the cause of the injury is completely explained. On this issue, reasonable minds could differ. *See Kemalyan*, 45 Wn.2d at 705.

## III

We hold that the doctrine of res ipsa loquitur is applicable in this case and reaffirm that a plaintiff is entitled to an instruction on the doctrine where the elements of res ipsa loquitur are satisfied, even if the defendant's testimony suggests but does not completely explain how the event causing injury to the plaintiff may have occurred. Because the Court of Appeals concluded that the res ipsa loquitur instruction should not have been given to the jury, the Court of Appeals is reversed and the judgment of the superior court that was based on the jury's verdict is reinstated.

JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

MADSEN, J., concurs in the result.