IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR R. SOUCY, an individual,<br><br>               Appellant,<br><br>       v.<br><br>DR. DAVID GILBERTSON, an individual,<br>and MILLCREEK CHIROPRACTIC<br>CLINIC,<br><br>               Respondent. | No. 79927-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Dr. David Gilbertson provided chiropractic treatment for Arthur Soucy. After the treatment, Soucy suffered a stroke. He sued, alleging that Gilbertson performed a technique that caused dissection of his vertebral arteries, which in turn caused his stroke. At trial, Soucy requested a res ipsa loquitur jury instruction, which the trial court denied. The jury returned a verdict in Gilbertson's favor. Soucy appeals. Because the trial court should have given a res ipsa loquitur instruction and its failure to do so prejudiced Soucy, we reverse and remand.

## BACKGROUND

Soucy visited Gilbertson's clinic to receive treatment for neck pain. Gilbertson had before provided treatment to Soucy for the pain, but the techniques he used had not relieved it. In the session at issue, Gilbertson twice

performed an occipital lift on Soucy.[1]  It was the first time he had used this technique on Soucy.  After each use of the technique, Soucy felt a tear in his neck.  Soucy stood up and told Gilbertson he felt "woozy" and "weird."  Gilbertson performed another technique on Soucy.  Soucy again told Gilbertson that he felt "woozy" and "weird."  Gilbertson told him to stay in the clinic for a few minutes.  While walking to the waiting room, Soucy felt as if he had no control over his legs.  After breaking out in a cold sweat and beginning to feel nauseated, Soucy walked to the restroom.  He tried to vomit but could not.  Soucy left the restroom to find Gilbertson's assistant, who directed him back to Gilbertson's office after he told her he was not feeling well.  Soucy told Gilbertson he felt like he was having a stroke, and Gilbertson suspected the same.  Gilbertson had his staff call 911.

A doctor diagnosed Soucy as having suffered a stroke.  A later diagnosis revealed he had also suffered dissections in his vertebral arteries and fibromuscular dysplasia (FMD).[2]

Soucy sued Gilbertson, alleging the occipital lift caused his stroke.  He requested a res ipsa loquitur jury instruction, which the trial court denied.  The jury returned a defense verdict.

---

[1] The parties also call this manipulation a "Chrane condyle lift."  This technique is a high-velocity, low-amplitude maneuver intended to decompress the neck.

[2] FMD is a connective tissue disorder that may predispose a person to developing arterial dissections.

ANALYSIS

Soucy argues the trial court erred in denying his request for a res ipsa loquitur instruction, and that this error prejudiced him. We agree.

When res ipsa loquitur applies, a plaintiff need not prove that the defendant committed any specific act of negligence. Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003). The doctrine permits the jury to infer negligence "on the basis that the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person." Id. Res ipsa loquitur applies when:

> (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

Jackass Mt. Ranch, Inc., v. S. Columbia Basin Irrig. Dist., 175 Wn. App. 374, 398, 305 P.3d 1108 (2013) (quotation marks omitted) (quoting Horner v. N. Pac. Beneficial Ass'n Hosp., Inc., 62 Wn.2d 351, 359, 382 P.2 518 (1963)). A plaintiff may be entitled to a res ipsa loquitur instruction "even if the defendant's testimony, if believed by the jury, would explain how the event causing injury to the plaintiff occurred." Pacheco, 149 Wn.2d at 440. Indeed, "[e]ven where the defendant offers weighty, competent and exculpatory evidence in defense, the doctrine may apply." Id.

Once, through use of res ipsa loquitur, the plaintiff establishes a prima facie case of negligence, "the defendant must then offer an explanation, if [they]

3

can. 'If then, after considering such explanation, on the whole case and on all the issues as to negligence, injury and damages, the evidence still preponderates in favor of the plaintiff, plaintiff is entitled to recover; otherwise not.'" Pacheco, 149 Wn.2d at 441–42 (internal quotation marks omitted) (quoting Covey v. Western Tank Lines, 36 Wn.2d 381, 392, 218 P.2d 322 (1950)).

"A party is entitled to a jury instruction only if it has offered substantial evidence to support the instruction." Cooper v. Dep't of Labor & Indus., 188 Wn. App. 641, 647–48, 352 P.3d 189 (2015). Evidence is substantial if it could "persuade a fair-minded person of the truth of a declared premise." Nationscapital Mortg. Corp. v. Dep't of Fin. Inst., 133 Wn. App. 723, 738, 137 P.3d 78 (2006). In determining whether substantial evidence supports the instruction, we must view the evidence in the light most favorable to the instruction's proponent. Mina v. Boise Cascade Corp., 37 Wn. App. 445, 448, 681 P.2d 880 (1984), aff'd, 104 Wn.2d 696, 710 P.2d 184 (1985).

We review de novo a trial court's decision on a jury instruction if based on a matter of law, or for abuse of discretion if based on a matter of fact. Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). Whether res ipsa loquitur applies is a question of law. Pacheco, 149 Wn.2d at 436. And we will reverse a trial court's error on jury instructions only if the error is prejudicial. Stiley v. Block, 130 Wn.2d 486, 498–99, 925 P.2d 194 (1996).

A. Res Ipsa Loquitur Instruction

    1. Relationship between FMD and vertebral artery dissection

Gilbertson's primary argument on all three elements of res ipsa loquitur is that vertebral artery dissections occur in persons, like Soucy, who have FMD in their vertebral arteries. Thus, he argues, the dissection and stroke are of a kind that ordinarily happen without negligence, the instrumentality causing the injury was not within Gilbertson's exclusive control, and Soucy voluntarily contributed to his injuries.[3] But interpreting the facts about FMD in the light most favorable to Soucy—as Mina requires—substantial evidence suggests he did not have FMD in his vertebral arteries at the time of the treatment at issue.

A defense expert testified at trial that spontaneous vertebral artery dissection and strokes can occur among people who have FMD. This defense expert also testified that Soucy had FMD in his vertebral arteries when the dissection occurred, but not in the segment of the vertebral arteries where the dissection occurred.

A plaintiff-side expert testified there was no evidence of FMD in Soucy's vertebral arteries at any time.

Soucy's treating physician found evidence of FMD in his renal arteries,[4]

---

[3] The parties did not dispute that the arterial dissection led to the stroke.

[4] A renal artery is "any of the branches of the abdominal aorta that supply the kidneys being in man one to each kidney, arising immediately below the origin of the superior mesenteric artery, dividing into four or five branches which enter the hilum of the kidney, and giving off smaller branches to the ureter, adrenal gland, and adjoining structures." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1921 (2002).

but not in the "precerebral vessels."[5]  That physician stated that the FMD in

Soucy's renal arteries put him at risk for future dissections.  Another treating

physician stated that the contours of Soucy's left vertebral artery—including at

the time of treatment—were subtly irregular, "which may reflect underlying [FMD]

though this is not clearly apparent on the angiogram."  Soucy's medical record

from the day of his stroke does not mention FMD.  His record from the next day

notes FMD in his renal arteries.

Interpreting these facts in the light most favorable to Soucy, substantial

evidence suggests he did not have FMD in his vertebral arteries at the time of

treatment.  And Gilbertson does not point to evidence suggesting that arterial

dissections might occur in areas unaffected by FMD—indeed, his own expert's

testimony suggests that dissections are more likely to occur in areas affected by

FMD.  Because Soucy "is not required to 'eliminate with certainty all other

possible causes or inferences' in order for res ipsa loquitur to apply," he need not

conclusively show that he did not have FMD in his vertebral arteries at the time of

treatment.  Pacheco, 149 Wn.2d at 440–41 (quoting Douglas v. Bussabarger, 73

Wn.2d 476, 486, 438 P.2d 829 (1968)).[6]  We thus evaluate whether the trial court

---

[5] Neither the parties nor the medical records define "precerebral vessels," but Soucy's briefing implies—and his counsel stated at oral argument—that a vertebral artery is a precerebral vessel.

[6] In support of his argument that res ipsa loquitur does not apply, Gilbertson cites Morner v. Union Pac. R.R. Co., 31 Wn.2d 282, 196 P.2d 744 (1948).  In discussing whether res ipsa loquitur applied to a claim of negligence, Morner states that "'[i]f it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the doctrine cannot be invoked.'"  Id. at 296 (quoting 38 AM. JUR. 997 Negligence, § 300).  But in deciding that the plaintiff was not entitled to a res ipsa loquitur instruction, the court reasoned that the instruction "imposed upon [the defendant] the unjust burden of producing evidence upon some unknown, uncertain, conjectural cause which neither party had, or could have had,

should have given a res ipsa loquitur instruction assuming that Soucy did not

have FMD in his vertebral arteries.

   2. Was the occurrence causing Soucy's injury of a kind that does not
      ordinarily happen in the absence of negligence?

This first element of res ipsa loquitur is satisfied when one of three

conditions exist:

> (1) When the act causing the injury is so palpably negligent that it
> may be inferred as a matter of law, i.e., leaving foreign objects,
> sponges, scissors, etc., in the body, or amputation of a wrong
> member; (2) when the general experience and observation of
> mankind teaches that the result would not be expected without
> negligence; and (3) when proof by experts in an esoteric field creates
> an inference that negligence caused the injuries.

Pacheco, 149 Wn.2d at 438–39 (internal quotation marks omitted) (quoting

Zukowsky v. Brown, 79 Wn.2d 586, 595, 488 P.2d 269 (1971)).

   Soucy argues that because proof by trial chiropractic experts supported an

inference that negligence caused his injury, he has met the first element of res

ipsa loquitur. As referenced above, Gilbertson counters that because Soucy

suffers from FMD in his vertebral arteries, and vertebral artery dissections can

occur in such persons, his injuries are of a kind that may ordinarily happen

without negligence. We conclude that Soucy has satisfied this element through

expert testimony.[7]

---

in mind." Id. at 299. This aligns with the reasoning of later cases, such as Pacheco, which states that "res ipsa loquitur is inapplicable where there is evidence that is *completely* explanatory of how an accident occurred and no other inference is possible that the injury occurred another way." 149 Wn.2d at 439–40; see also Kemalyan v. Henderson, 45 Wn.2d 693, 705, 277 P.2d 372 (1954). Because evidence conflicts as to the extent of Soucy's FMD, the evidence does not completely explain how the accident occurred, so res ipsa loquitur may apply.

   [7] Soucy argues in the alternative that general experience teaches that his injuries could not have occurred without negligence. Since we conclude Soucy has established

7

In ZeBarth v. Swedish Hosp. Med. Cen., the plaintiff sued a hospital when he became paralyzed after receiving radiation treatment there. 81 Wn.2d 12, 13, 499 P.2d 1 (1972). Our Supreme Court held that testimony by radiation therapy experts that paralysis does not ordinarily occur from radiation therapy in the absence of negligence constituted "testimony of experts in an esoteric field" sufficient to satisfy the first element. ZeBarth, 81 Wn.2d at 22.

Here, at trial, Gilbertson agreed that an occipital lift, properly performed on a healthy person, cannot cause a tear in their vertebral arteries. Soucy's chiropractic expert testified that a properly performed occipital lift should not cause a vertebral artery dissection. Gilbertson's chiropractic expert testified that an occipital lift *could not* cause vertebral artery dissection. But his testimony just before this statement appears to imply that it is a "properly administered" occipital lift that could not cause vertebral artery dissection.[8] Interpreting all the above

res ipsa loquitur's first element through expert testimony, we do not consider this argument.

[8] The testimony provides:

[Defense chiropractic expert]:   What I found the most interesting about this particular study was that, number one, that a *properly administered* chiropractic treatment, the high-velocity/low-amplitude, could not cause a vertebral artery dissection or disruption to that vertebral artery, but also simply range of motion and things like mobilization actually put more strain on the vertebral artery than did a chiropractic treatment.

[Defense counsel]:   And this article made the conclusion, did it not, that under normal circumstances, a typical, high-velocity, low-amplitude spinal manipulative thrust is unlikely to disrupt the VA, the vertebral artery; correct?

[Defense chiropractic expert]:   Correct.

[Defense counsel]:   And it doesn't say Chrane condyle lift, it doesn't say diversified, it says high-velocity, low-amplitude. Is that what the Chrane condyle is?

[Defense chiropractic expert]:   Yes, it is.

(Emphasis added).

testimony in the light most favorable to Soucy, performing an occipital lift on a healthy person does not ordinarily cause vertebral artery dissection absent negligence. And assuming Soucy had no FMD in his vertebral arteries, this testimony supports an inference that Gilbertson improperly performed the occipital lift, leading to dissection of Soucy's vertebral arteries. Substantial evidence supports res ipsa loquitur's first element.

3. Was the injury caused by something within the Gilbertson's exclusive control?

Soucy argues he has met this element since Gilbertson had exclusive control over the occipital lift. We agree.

Gilbertson again cites Morner v. Union Pac. R.R. Co. for the proposition that "if it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the doctrine cannot be invoked." 31 Wn.2d 282, 296, 196 P.2d 744 (1948) (quoting 38 AM. JUR. 997 Negligence § 300). He argues that because Soucy's FMD may have contributed to the injury and was outside his control, the injury was not caused by something within Gilbertson's exclusive control. But again, later decisions hold that a trial court should not give a res ipsa loquitur instruction if a cause is *completely* explanatory of the plaintiff's injuries. Pacheco, 149 Wn.2d at 439–40. Given conflicting evidence about the extent of Soucy's FMD, Gilbertson's theory does not completely explain Soucy's injuries.

Gilbertson had exclusive control over the occipital lift, which Soucy claims caused his injuries. Viewing the evidence in the light most favorable to Soucy, we conclude that substantial evidence supports this element.

4. Was the injury-causing occurrence not due to any voluntary action or contribution by Soucy?

Soucy argues he did not contribute to Gilbertson's performance of the occipital lift. Gilbertson argues this element is not satisfied because Soucy's FMD contributed to his dissection and stroke.

Gilbertson argues that Soucy cannot meet this element because he had FMD in his vertebral arteries, which contributed to his dissection and stroke. But even assuming FMD in Soucy's vertebral arteries, a plaintiff's pre-existing condition does not negate satisfaction of this element. See Marshall v. W. Air Lines, Inc., 62 Wn. App. 251, 261, 813 P.2d 1269 (1991). And even if it could so negate, viewing the evidence in the light most favorable to Soucy, he did not have FMD in his vertebral arteries, so substantial evidence would support a conclusion of no contribution.

We thus conclude that substantial evidence supports all three elements of res ipsa loquitur.

B. Prejudice

Soucy argues that the trial court's failure to give a res ipsa loquitur instruction prejudiced him. We agree.

If evidence supports a party's proposed instruction, a trial court's omission of that instruction "will be 'reversible error where it prejudices a party.'" Millican v.

N.A. Degerstrom, Inc., 177 Wn. App. 881, 901, 313 P.3d 1215, 1225 (2013) (quoting Barrett v. Lucky Seven Saloon, Inc., 152 Wn.2d 259, 267, 96 P.3d 386 (2004)).  Jury instruction error "is prejudicial if it substantially affected the outcome of the case," but not if it "is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the outcome of the case."  Magana v. Hyundai Motor Am., 123 Wn. App. 306, 316, 94 P.3d 987 (2004) (internal quotation marks omitted) (quoting State v. Townsend, 142 Wn.2d 838, 848, 15 P.3d 145 (2001)).

Had the trial court given a res ipsa loquitur instruction, the jury could have inferred that Gilbertson negligently performed the occipital lift.  Then, Gilbertson would have still been allowed to offer his explanation that FMD caused Soucy's injuries, not his performance of the occipital lift.  The jury would then have decided whether the evidence favored Soucy or Gilbertson.

But without such an instruction, Soucy bore the burden of establishing that Gilbertson had performed the lift negligently, where no recording of its performance existed.  Soucy's chiropractic expert could not specifically testify about whether Gilbertson had performed the lift negligently.[9]  Soucy did not see Gilbertson perform the manipulation.  Soucy did testify that Gilbertson's use of the technique was not "especially strong or violent" as compared to other techniques Gilbertson had used.  But since Gilbertson had not performed the lift on Soucy before, Soucy could not testify about whether the force used differed

---

[9] [Question]: In fact, you can't sit here and testify exactly how he did the condyle lift in this particular case; correct?

[Answer]: Correct.

11

from normal performance of the occipital lift technique. Nor could Soucy testify whether the rotation or technique used differed from normal performance of the lift.

Res ipsa loquitur may apply if, as here, "the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person." Pacheco, 149 Wn.2d at 436. Gilbertson argues these are not such circumstances because neither he nor Soucy was aware of Soucy's FMD. But assuming that Soucy did not have FMD in his vertebral arteries, the question is whether Gilbertson exclusively has knowledge as to the nature of his performance of the occipital lift technique—and he does.

Because, without a res ipsa loquitur instruction, Soucy bore a greater burden of proof, and Soucy had no practical access to evidence of the cause of his injuries, the trial court's failure to give the instruction substantially affected the outcome of the case.

We conclude that trial court's error prejudiced Soucy, and thus reverse and remand.

_____
Chun, J.

WE CONCUR:

_____     _____
Mann, C.J.                   Verellen, J.