IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL REID, an individual,<br><br>　　　　　Appellant,<br><br>　　　v.<br><br>NORIX GROUP, INC., an Illinois Corporation, and KING COUNTY,<br><br>　　　　　Respondents. | No. 83850-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Michael Reid filed this premises liability suit against King County based on injuries he sustained at the Maleng Regional Justice Center (MRJC) when he sat on a chair in an attorney-client visiting room that gave way. The trial court granted King County's motion for summary judgment. We hold that Reid is not entitled to an adverse inference based on spoliation of the chair, as King County did not owe Reid a duty to preserve that evidence. And while the doctrine of res ipsa loquitur establishes an inference of negligence, the inference is rebutted by evidence that any injury-causing condition was undiscoverable. Because the record evidence does not raise a triable issue of material fact, we affirm the summary judgment dismissal of Reid's claim.

FACTS

In the summer of 2017, attorney Michael Reid went to the MRJC to meet a client and interview a prospective client. Reid's meetings took place in one of the MRJC's attorney-client meeting rooms.

In the meeting room, Reid, who weighed 437 pounds at that time, sat down in a blue plastic chair, model name Integra, made by Sebel, an Australian company. According to Reid, the Integra chair "seemed like a normal chair" and was one of a group[1] in use at the MRJC since it opened in 1997.[2]

Reid met with an existing client for about a half hour and then waited about ten more minutes to talk with a prospective client, David Reimers. After Reid talked with Reimers for about ten to fifteen minutes, "the chair totally gave out and threw [Reid] to the concrete floor." Reid testified at his deposition that "[t]he chair all of a sudden turned to jelly." The chair gave "no warning, no anything, and immediately slammed [Reid] to the ground on [his] left hip."

Reid is clear that the chair did not break. He said, "I don't know exactly what [the chair's legs] did when it collapsed other than it didn't shatter, it didn't break, it turned to Jell-O and was, you know, like, in a Jell-O form. And then, boom, it reconstituted itself." After the event, in Reid's words, the chair "looked

---

[1] As of 2022, there were approximately 45 Sebel chairs in use in the visitation booths at MRJC.

[2] The parties do not dispute that King County's 6-year records retention policy means it has no precise records regarding the purchase of Sebel Integra chairs used at the MRJC since it opened. The record shows King County made three Integra chair purchases for its jail in Seattle, but there is no record these chairs were sent to the MRJC in Kent. The maintenance and supply sergeant at the MRJC for the period 2014-20 does not recall whether the MRJC ever purchased Integra chairs after it opened. The parties do not dispute that Integra chairs do not have individual serial numbers.

perfectly normal. You know, like a normal chair, like it did before the accident when I walked in the room."

Reimers, the potential client who was present at the time of the incident, was sitting facing Reid. In the meeting room, there is a window in the wall separating attorneys from clients and a counter at which the attorney sits. Reimers testified in his deposition that he could not see the chair's legs when Reid fell. Nevertheless, Reimers corroborated Reid's statement that the chair did not break and testified the chair was laying on its side after Reid fell. The chair did not look like Jell-O or jelly to Reimers.

After Reid fell, he was "so startled, surprised and in pain that the interview only lasted about another 10 minutes." Reid told an officer at the MRJC check-in desk that he just had a bad accident. He explained the chair collapsed and that he was really hurting. He told the officer, "You need to do something or take a record . . . ." The officer "just ignored [Reid]," did not respond and "wouldn't even talk to [Reid]."

Reid initially sued the chair's manufacturer, wholesaler, and retailer for products liability, then added a claim for premises liability against King County.[3] King County moved for summary judgment in February 2022, and the trial court granted the motion, dismissing the claim. Reid timely appeals.

---

[3] Although this information is not in the record on appeal, according to King County, the claims against the other defendants were dismissed. King County is the only respondent in Reid's appeal.

DISCUSSION

Reid assigns error to the trial court's order granting King County's motion for summary judgment. On appeal, we review summary judgments de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The moving party has the burden of showing that there is no genuine issue as to any material fact." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007). The court views all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). "When a nonmoving party fails to controvert relevant facts supporting a summary judgment motion, those facts are considered to have been established." Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wn.2d 346, 354-55, 779 P.2d 697 (1989) (citing Wash. Osteopathic Med. Ass'n v. King County Med. Serv. Corp., 78 Wn.2d 577, 579, 478 P.2d 228 (1970).

The essential elements of any negligence action are (1) the existence of a duty to plaintiff; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury. Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

On appeal, Reid contends the court granted summary judgment improperly for several reasons. First, Reid argues King County owed him a duty of reasonable care to inspect and make safe its chairs at the MRJC. Reid also argues there are material issues of fact either because the doctrine of res ipsa loquitur applies and affords him an inference of negligence, or because King County spoliated evidence so he was due an adverse inference in his favor. King County counters that the res ipsa loquitur and spoliation doctrines do not apply, the event was not within the field of danger that it could have foreseen, and there is insufficient evidence to establish proximate cause.[4]

We hold that there was no spoliation because King County did not owe Reid a duty to preserve the chair. We agree with Reid that he is due an inference of negligence pursuant to the doctrine of res ipsa loquitur. However, because there is insufficient evidence to create a genuine issue of material fact as to foreseeability, we affirm the trial court's summary judgment dismissal of his negligence claim.

I.      Spoliation

Reid argues that King County spoliated evidence—the chair that injured him—so he was due an adverse evidentiary inference. We disagree. King County had no duty to preserve the evidence and, thus, no adverse evidentiary inference is due.

---

[4] King County also argues that it did not owe Reid a duty of care because Reid was not an invitee, but a licensee. At oral argument, Reid conceded "it doesn't matter" whether Reid was an invitee or a licensee at the MRJC, so we do not reach that issue.

"[A] court may impose a sanction for the failure to preserve evidence before a lawsuit is initiated only if, as a threshold legal issue, the allegedly spoliating party owed a duty [to the party seeking sanctions] to preserve that evidence." Seattle Tunnel Partners, et al. v. Great Lakes Reinsurance (UK) PLC, et al., No. 79460-4-I, slip op. at 29 (Wash. Ct. App. Apr. 10, 2023), https://www.courts.wa.gov/opinions/. We review the question of whether a duty exists de novo. Cook v. Tarbert Logging, Inc., 190 Wn. App. 448, 461, 360 P.3d 855 (2015).

If a party had a duty to preserve evidence and breached that duty, then a court will determine the level of culpability—i.e., whether the spoliating party acted intentionally, in bad faith, with conscious disregard for the importance of the evidence, negligently, or innocently. Seattle Tunnel Partners, No. 79460-4-I, slip op. at 35 (citing Henderson v. Tyrrell, 80 Wn. App. 592, 609, 910 P.2d 522 (1996); Homeworks Constr., Inc. v. Wells, 133 Wn. App. 892, 900, 138 P.3d 654 (2006)). "[A]n adverse inference jury instruction is not an appropriate sanction for spoliation if the party's failure to preserve evidence is neither intentional nor rises to the level of bad faith." Seattle Tunnel Partners, No. 79460-4-I, slip op. at 37. Merely negligent destruction of evidence cannot support an adverse inference. Cook, 190 Wn. App. at 469-70.

In this case, the parties do not dispute that the exact chair at issue has never been identified. According to King County, MRJC custodial staff may have

6

discarded the chair or possibly "the chair is still out there being used" because the chair did not break.[5]

Regarding duty, Reid argues that his statements to the officer who checked him out of the attorney-client interview room imposed a duty on King County to preserve the chair. Reid testified that he tried to give a statement and tried to get the officer to make a record, but the officer "ignored" him. But he does not provide authority as to why these efforts created a duty on King County's part to preserve specific evidence. In Washington, there is no general duty to preserve evidence. Cook, 190 Wn. App. at 461. A duty "does not arise simply because a person has been injured by an arguably negligent act and a lawsuit is a possibility." Seattle Tunnel Partners, No. 79460-4-I, slip op. at 23 (citations omitted). While a duty "may, under some circumstances, arise out of a pre-lawsuit letter from an injured party or their attorney requesting that the party in control of the evidence not dispose of it without prior notice," id. at 29 (citing Cook, 190 Wn. App. at 464), here, there is no evidence of such a request by Reid to King County.[6]

We agree with King County that it had no duty to preserve the chair as evidence. Thus, we need not reach the issues of culpability or sanctions to conclude that Reid was not due an adverse evidentiary inference due to spoliation.

---

[5] Reid testified in his deposition that the chair was "normal" when he left the meeting room and did not look damaged or defective.

[6] In fact, the record shows Reid did not begin investigating until two years after the incident, as Reid's prior attorney appears to have initiated a public records request in June 2019.

    II.    Res ipsa loquitur

Reid argues that res ipsa loquitur applies so the question of negligence must go to a jury. We agree the doctrine applies, but the effect is only to supply a rebuttable inference of negligence.

Res ipsa loquitur means "the thing speaks for itself." W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 243 (5th ed. 1984). "Res ipsa loquitur is not an independent legal claim; it is instead a tool of circumstantial evidence that allows a plaintiff to proceed with a negligence claim when a defendant's specific act of negligence is unclear." Wells v. Nespelem Valley Elec. Coop., Inc., 13 Wn. App. 2d 148, 155, 462 P.3d 855 (2020) (citing Pacheco v. Ames, 149 Wn.2d 431, 436, 69 P.3d 324 (2003)). Generally, the doctrine "provides nothing more than a permissive inference" of negligence. Curtis v. Lein, 169 Wn.2d 884, 889, 239 P.3d 1078 (2010) (quoting Zukowsky v. Brown, 79 Wn.2d 586, 600, 488 P.2d 269 (1971)). It is "ordinarily sparingly applied, 'in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential.' " Curtis, 169 Wn.2d at 889 (quoting Tinder v. Nordstrom, Inc., 84 Wn. App. 787, 792, 929 P.2d 1209 (1997) (quoting Morner v. Union Pac. R.R. Co., 31 Wn.2d 282, 293, 196 P.2d 744 (1948))). As the Washington Supreme Court has explained,

> "The doctrine of res ipsa loquitur spares the plaintiff the
> requirement of proving specific acts of negligence in cases where a
> plaintiff asserts that he or she suffered injury, the cause of which
> cannot be fully explained, and the injury is of a type that would not
> ordinarily result if the defendant were not negligent. In such
> cases the jury is permitted to infer negligence. The doctrine permits
> the inference of negligence on the basis that the evidence of the

cause of the injury is practically accessible to the defendant but inaccessible to the injured person."

Curtis, 169 Wn.2d at 890 (quoting Pacheco, 149 Wn.2d at 436). Whether res ipsa loquitur applies in a given context is a question of law. Curtis, 169 Wn.2d at 889.

### A. Whether res ipsa loquitur applies

A plaintiff may rely upon res ipsa loquitur's inference if (1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the instrumentality or agency that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence. Id. at 891.

The record shows no dispute regarding the last two elements. Neither party disputes the chair was the instrumentality of Reid's injuries or that the chair was in the MRJC's exclusive control. As to whether Reid contributed to the occurrence that caused him injury, Reid asserts he sat in the chair "fully balanced and in control . . . [he] wasn't doing anything weird or unusual in the chair." Because the court must view the facts in the light most favorable to the nonmovant, the evidence is that Reid did not contribute to the occurrence that caused him injury. Therefore, whether the doctrine applies depends on the first element, whether the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence.

The first element is satisfied if one of three conditions is present:

(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong

9

> member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

Curtis, 169 Wn.2d at 891 (internal citations omitted). Reid relies on the second condition and argues that "[g]eneral experience and observation teach that a chair being normally used does not collapse unless it cannot support the weight of the person or it has a defect or is negligently maintained."

In Curtis, the Court held res ipsa loquitur applied when Curtis fell through a wooden dock on the Leins' property. Id. at 888-89. The Court concluded the trial court erred by failing to apply the doctrine merely because other non-negligent causes could have caused Curtis's injury. Id. at 894-95. And the Court further held that this court erred by parsing the inference: "When res ipsa loquitur applies, it provides an inference as to the defendant's breach of duty." Id. at 892. Thus, because wooden docks do not normally give way if properly maintained, the dock was in the Leins' exclusive control, and there was no dispute that Curtis had not contributed to the occurrence, Curtis was entitled to the inference. Id. at 895.

The Washington Supreme Court has also held that "[i]n the general experience of [people], the collapse of a seat is an event that would not be expected without negligence on someone's part." Zukowsky, 79 Wn.2d at 596 (plaintiff was injured when a sailboat's helm seat on which she was sitting collapsed); see also Rose v. Melody Lane of Wilshire, 39 Cal.2d 481, 486, 247 P.2d 335 (1952) ("Seats designed for use by patrons of commercial

10

establishments do not ordinarily collapse without negligence in their construction, maintenance, or use."),[7] cited in Zukowsky, 79 Wn.2d at 596.

The undisputed summary judgment evidence was that Reid was sitting on the chair, and then it gave way. In addition to Reid's own account, Reimers testified he observed Reid sitting down, then he saw Reid on the ground and the chair on its side.[8] For the purpose of determining whether res ipsa loquitur applies, the proper focus is whether the chair caused Reid's injury due to negligence, rather than the details of what precisely happened to the chair.[9] Reid uses the word "collapse," and it is undisputed that the chair did not break and that, after Reid fell, the chair was "normal." As the Curtis Court made clear, if the

---

[7] The California Supreme Court in Rose cited to multiple other cases, including in other jurisdictions, in support of this proposition. 39 Cal.2d at 486 (citing Gross v. Fox Ritz Theatre Corp., 12 Cal. App. 2d 255, 256, 55 P.2d 227 (1936); Micek v. Weaver-Jackson Co., 12 Cal. App. 2d 19, 21-22, 54 P.2d 768 (1936); Gow v. Multnomah Hotel, 191 Or. 45, 65, 224 P.2d 552 (1950); Billroy's Comedians v. Sweeny, 238 Ky. 277, 278, 37 S.W.2d 43 (1931); Sasso v. Randforce Amusement Corp., 243 App. Div. 552, 275 N.Y.S. 891 (1934); Fox v. Bronx Amusement Co., 9 Ohio App. 426, 430 (1918); cf. Durning v. Hyman, 286 Pa. 376, 379-82, 133 A. 568 (1926); Gates v. Crane Co., 107 Conn. 201, 203, 139 A. 782 (1928); Bence v. Dembo, 98 Ind. App. 52, 56-57, 183 N.E. 326 (1932)).

[8] While Reimers did not observe the chair turning to "Jell-O," he did testify that the chair was lying on its side after Reid fell.

[9] The present case is not one in which there is doubt about whether the injury-resulting event occurred. By contrast, in Marshall v. W. Air Lines, the court determined that res ipsa loquitur did not apply to a plaintiff's claim that alleged an airline's negligence caused her ear injury because there was no evidence other than plaintiff's own speculation that the injury-causing incident, a sudden change in air pressure, actually occurred. 62 Wn. App. 251, 259, 813 P.2d 1269 (1991). This court explained:

> We believe. . . that an implied requirement of the first element is that the "accident or occurrence" alleged to have produced the injury actually occurred. In the typical case the parties do not dispute the occurrence of the event alleged to have produced the injury. . . If the court cannot say within reasonable probabilities that the alleged injury-producing event occurred, then the doctrine of res ipsa loquitur cannot be invoked to create an inference of negligence.

Id. at 259-60. In Marshall, the plaintiff alleged a sudden change in air pressure caused her injury, but the only direct evidence of a sudden change in air pressure was Marshall's own testimony; her expert's hypothesis was speculation. Id. at 252, 260. The airline's expert's testimony that the pressurization problems were repaired by the time of the flight, and no such problems occurred during the flight, was supported by flight and maintenance records. Id. at 260. Marshall presented no evidence that other passengers noticed a pressure change. Id. at 252-53.

plaintiff shows the injury-producing event is of a type that would not ordinarily occur absent negligence, it is improper to require plaintiff to prove that the injury-producing instrument had obvious defects. 169 Wn.2d at 893-94. A plaintiff claiming res ipsa loquitur is not required to eliminate with certainty all other possible causes or inferences. Id. at 894 (internal quotations omitted). The doctrine is inapplicable only when "there is evidence that is completely explanatory of how an accident occurred and no other inference is possible that the injury occurred another way." Id. (citing Pacheco, 149 Wn.2d at 439-40).

Here, Reid is correct that King County has not provided evidence that is completely explanatory of the accident so as to preclude the application of res ipsa loquitur. And Reid has shown each of the elements necessary for the application of the res ipsa loquitur inference: (1) he has shown the injury-producing event is of a type that does not ordinarily happen in the absence of negligence because general experience counsels that chairs do not collapse, (2) it is not disputed that the chair was in the exclusive control of King County at the MRJC, and (3) the evidence shows that Reid did not contribute in any way to the accident.[10] See Curtis, 169 Wn.2d at 895. Thus, even if allegations that a chair could turn to Jell-O or jelly seem extraordinary, Reid's account of what happened is at a minimum sufficient to establish that the chair collapsed or gave

---

[10] The parties do not dispute whether Reid was using the chair properly. Reid also does not argue that King County had a duty to provide him a chair that could support his weight. Although there is evidence that Sebel Integra chairs subsequently purchased by King County for similar use are tested to bear a static load of 400 pounds, Reid concedes the record contains no evidence stating the weight capacity of the Integra chairs that were at the MRJC at the time of the incident.

way. The doctrine of res ipsa loquitur applies here because, in people's general experience, chairs do not collapse in the absence of negligence.

    B.  <u>Effect of the res ipsa loquitur inference and summary judgment</u>

If the doctrine of res ipsa loquitur applies, the next issue is the procedural effect of the inference. <u>Zukowsky</u>, 79 Wn.2d at 597 ("Having determined that res ipsa loquitur applies, there remains the question of its procedural effect."). The procedural effect of the doctrine is a question of law. <u>Id.</u> at 592 (citing <u>Nelson v. Murphy</u>, 42 Wn.2d 737, 258 P.2d 572 (1953)).

The primary purpose of the res ipsa loquitur doctrine is to withstand the challenge of judgment as a matter of law. <u>Zukowsky</u>, 79 Wn.2d at 598. In a given case, the doctrine's procedural effect depends upon the strength of the inference to be drawn from the circumstances in evidence. <u>Id.</u> at 599-600 (citing W. PROSSER, LAW OF TORTS § 40, at 234 (3rd ed. 1964)) (other citations omitted). "The strength of the inference varies not only according to the manner of the particular occurrence, but also with the standard or degree of care which the defendant owed to the plaintiff in connection with the occurrence." <u>Id.</u> at 600. Thus, contrary to Reid's suggestion, the application of the res ipsa loquitur inference does not always mean that there is a question of triable fact.

Instead, if the inference applies, the result is "to shift the burden to the defendant to prove, through evidence sufficient to rebut the inference arising from the application of res ipsa loquitur, that the faulty condition was undiscoverable by the defendant." <u>Curtis</u>, 169 Wn.2d at 892-93 (citing <u>Penson v. Inland Empire Paper Co.</u>, 73 Wash. 338, 347-48, 132 P. 39 (1913)).

13

> If the defendant seeks a directed verdict . . . , [the defendant] must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable persons could no longer accept it. . . . If the defendant shows definitely that the occurrence . . . could not have been avoided by the exercise of all reasonable care, the inference of negligence is no longer permissible, and the verdict is directed for the defendant.

W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 40, at 261-62 (5th ed. 1984).[11] At summary judgment, the moving party has the burden of showing there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. CR 56(c). Thus, if res ipsa loquitur supplies an inference of negligence, a defendant at summary judgment may still satisfy this burden by showing there is no genuine issue of material fact as to whether "the occurrence . . . could not have been avoided by the exercise of all reasonable care." KEETON, ET AL., supra, § 40, at 261-62.

Here, King County provides unrebutted expert testimony that there are no known theories that explain how what Reid claims happened was a discoverable

---

[11] Prosser and Keeton further explain:

> But if the defendant merely offers evidence of [the defendant's] own acts and precautions amounting to reasonable care, it is seldom that a verdict can be directed in [the defendant's] favor. The inference from the circumstances remains in the case to contradict [the defendant's] evidence. If the defendant testifies that [the defendant] used proper care to insulate [the] wires, to inspect [the] chandelier, to drive [the] bus, or to keep defunct mice and wandering insect life out of [the] bottled beverage, the fact that electricity escaped from the wires, that the chandelier fell, that the bus went into the ditch and the bug was in the bottle, with the background of common experience that such things do not usually happen if proper care is used, may permit reasonable [jurors] to find that [the defendant's] witnesses are not to be believed, that the precautions described were not sufficient to conform to the standard required . . . .

KEETON, ET AL., supra, § 40, at 261-62. Accord 5 KARL B. TEGLAND AND ELIZABETH A. TURNER, WASH. PRAC., EVIDENCE LAW & PRACTICE § 301.14, at 230-31 (6th ed. 2016) ("The doctrine of res ipsa loquitur seems to embody the Thayer theory of presumptions," i.e., those which disappear like a "bursting bubble" and no longer operate for any purpose as soon as evidence contrary to the presumption exists.).

condition such that, with the exercise of reasonable care, the occurrence could have been avoided. King County's commercial materials failure analysis expert, Wade Lanning, stated that even if he assumed Reid was speaking poetically, "[n]o material properties or theories from deformation mechanics known to me offer an explanation for why the chair material would suddenly and spontaneously lose strength and rigidity before suddenly and spontaneously regaining its original properties and shape."

Reid points to evidence that King County "admits that it never inspected the chairs in the visiting rooms for defects for the entire 20 years they had been in service," and did not maintain records relating to previously broken chairs.[12] But the record also contains unrebutted testimony that Sebel Integra chairs require no maintenance or repair, as the chairs are made out of a single piece of heavy-duty cast plastic and have never been known to fail under normal use. King County's CR 30(b)(6) representative, David Richardson, testified he could not recall a chair collapsing under normal use. The only occasion he could recall a chair being broken involved misuse. Likewise, a corrections officer responsible for purchasing and inventory at MRJC, James McComas, stated that the only time chairs had broken were because of misuse, such as inmates leaning back or sitting on top of a stack of chairs.

---

[12] Reid points to King County's admission that "there are no records relating to the inspection, maintenance and/or disposal of previously broken chairs." King County has a six-year records retention policy. King County searched its available records for information about Integra chair purchases and chair collapses at the MRJC and found no such records. It is also undisputed that the chair in question was purchased before 1997, more than twenty years before the event in question.

The evidence presented by King County, unrebutted by Reid, supports a conclusion that the allegedly faulty condition was undiscoverable. Thus, the evidence "destroys any reasonable inference of negligence" supplied by the application of res ipsa loquitur.

We conclude that there is no question of fact as to whether King County breached a duty it owed to Reid. Because Reid has the burden of proving each element of negligence, King County is entitled to judgment as a matter of law.

We affirm.

_____
Chung, J.

WE CONCUR:

_____     _____
Brennan, J.                          Smith, C.J.